In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00151-CR
______________________________


MONGO JABARR WILLIAMS, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 31825-B


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â In the middle of a Kilgore roadway, Peter Smith was severely beaten with a baseball bat,
which left him in a pool of his own blood with a crushed skull and struggling to breathe. He died
several months later without ever regaining consciousness.
Â Â Â Â Â Â Â Â Â Â Â Â Evidence suggests that Mongo Jabarr Williams thought Smith had assaulted Williams'
mother. Witnesses described Smith being attacked by Williams and his brother, Demarko Dennis. 
Smith's blood was found on Williams' pants. Williams was convicted of Smith's murder and
sentenced to fifty years' imprisonment.
Â Â Â Â Â Â Â Â Â Â Â Â On appeal, Williams contends we should reverse his conviction because a poster-sized
bloody photograph of the victim was introduced into evidence, and because a portion of the State's
final argument during the guilt/innocence phase of trial was erroneously allowed. We affirm the
judgment of the trial court because (1) admitting the enlarged photograph of the victim was not an
abuse of the trial court's discretion, and (2) Williams preserved no error regarding the State's jury
argument.
(1) Admitting the Enlarged Photograph of the Victim Was Not an Abuse of Discretion
Â Â Â Â Â Â Â Â Â Â Â Â The complained-of photograph, State's Exhibit 12, is essentially an enlargement of a
snapshot-sized photograph that had previously been introduced into evidence as State's Exhibit 6. 
It is a picture of Smith's body lying on the road, his head in a pool of blood. Williams argues that,
because the photograph was largeâ22 inches by 34 inchesâit displayed the lurid details of the
crime scene in an unfairly prejudicial fashion. He contends that it was more prejudicial than
probative and that the trial court abused its discretion by admitting it over his objection.
Â Â Â Â Â Â Â Â Â Â Â Â The admissibility of photographs over challenge is within the sound discretion of the trial
court. Wyatt v. State, 23 S.W.3d 18, 29 (Tex. Crim. App. 2000); Sonnier v. State, 913 S.W.2d 511,
518 (Tex. Crim. App. 1995). An abuse of discretion arises only when the probative value of the
photograph is small and its inflammatory potential is great. In determining whether certain
photographs are admissible under Rule 403, several factors should be considered: the number of
exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or
color, whether they are close-up, whether the body is naked or clothed, the availability of other
means of proof, and the circumstances of each case. Tex. R. Evid. 403; Emery v. State, 881 S.W.2d
702, 710 (Tex. Crim. App. 1994). Further, photographs are generally admissible where testimony
describing the scene is admissible. Emery, 881 S.W.2d at 710.
Â Â Â Â Â Â Â Â Â Â Â Â The photograph provides a pictorial representation of the crime scene, and is of something
that could be, and was, described by a witness. It depicts the clothed victim, lying on the road, with
a pool of blood at his obviously severely beaten head. The photograph appears to have been taken
at night, and while the flash illuminated the victim's clothing so that it is clearly visible, his head and
face are virtually indistinguishable in the smaller photo. The larger print provides detailsâa better
view of the injury's gravity and more visual clues that the victim was left lying on a roadwayâthat
are not apparent in the smaller snapshot; and the trial court concluded the larger image was helpful
to the jury in understanding Smith's condition after the beating. This has a heavier weight than it
might otherwise, because Smith did not die as an immediate result of the beating. He died of
secondary infections several months later.
Â Â Â Â Â Â Â Â Â Â Â Â Once a defendant objects to photographic evidence on the basis of Rule 403, the trial court
must weigh its probative value against its potential for unfair prejudice. Narvaiz v. State, 840
S.W.2d 415, 429 (Tex. Crim. App. 1992). The photograph in question apparently depicted no more
than the gruesome nature of the injuries inflicted on Smith. Although a crime scene photograph may
be gruesome, that fact alone will rarely render the photograph necessarily inadmissible under Rule
403. Id. at 430; Long v. State, 823 S.W.2d 259, 272â73 (Tex. Crim. App. 1991). The trial court
"must consider the host of factors affecting probativeness . . . and balance those factors against the
tendency, if any, that the photographs have to encourage resolution of material issues on an
inappropriate emotional basis." Ladd v. State, 3 S.W.3d 547, 568 (Tex. Crim. App. 1999).
Â Â Â Â Â Â Â Â Â Â Â Â In this case, we find that the enlarged photograph had probative value and was not so
improperly prejudicial as to be outside the zone of reasonable disagreement as to its admissibility. 
The contention of error is overruled.
(2) Williams Preserved No Error Regarding the State's Jury Argument
Â Â Â Â Â Â Â Â Â Â Â Â Williams next complains about comments made by the prosecutor during jury argument in
which he suggested that, had Williams called Williams' mother as a witness, the State could have
discredited her in cross-examination. Williams also complains of jury argument in which the
prosecutor described the attackers as animals.
Â Â Â Â Â Â Â Â Â Â Â Â The general rule for presenting a complaint for appellate review is a showing in the record
that (1) the complaint was made to the trial court by a request, objection, or motion that was timely
and sufficiently specific to make the trial court aware of the grounds of complaint and (2) the trial
court ruled adversely (or refused to rule, despite objection). Tucker v. State, 990 S.W.2d 261, 262
(Tex. Crim. App. 1999). To reach the level of an adverse ruling, if the objection is sustained,
counsel must then ask for an instruction to disregard. If the instruction is given, counsel must then
move for a mistrial. Nethery v. State, 692 S.W.2d 686, 701 (Tex. Crim. App. 1985); Coe v. State,
683 S.W.2d 431, 436 (Tex. Crim. App. 1984). If counsel does not pursue the objection to an adverse
ruling, error is not preserved. Tex. R. App. P. 33.1; Ramirez v. State, 815 S.W.2d 636, 643 (Tex.
Crim. App. 1991).
Â Â Â Â Â Â Â Â Â Â Â Â In each case raised on appeal, counsel objected to the prosecutor's comment, the objection
was sustained, and the trial court instructed the jury to disregard. No request for mistrial was made. 
No complaint was pursued to an adverse ruling. Thus, no claim of error was preserved for our
review.
Â Â Â Â Â Â Â Â Â Â Â Â The contentions of error are overruled.
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â September 22, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â October 5, 2005

Do Not Publish



 to
Champion, it did so by establishing that it implemented a family service plan for Champion. 
Evidence that the caseworker did not meet with Champion does not raise a substantial issue for
appellate review on these facts.

 The record also shows that Champion did not regularly visit or maintain significant contact
with J.J.W. In the eight years of J.J.W.'s life, Champion has never seen or met the child even when
he was not incarcerated. Nor has any of his family. 

 With respect to evidence of Champion's failure to provide a safe environment for J.J.W., the
trial court had before it Champion's criminal history showing that he has repeatedly been convicted
of possession of a controlled substance. A series of convictions, community supervisions,
revocations, and incarcerations for offenses, centered primarily on charges of possession of
controlled substances, have resulted in Champion having spent a good deal of the time between 1995
and the present incarcerated. In June 2007, his most recent conviction, for the first-degree felony
offense of possession of controlled substance with the intent to deliver, resulted in a sentence of
nineteen years' imprisonment. Champion's repeated convictions and resulting prolonged
incarceration is a factor that may be considered. See M.R.J.M., 280 S.W.3d at 503; In re S.M.L., 171
S.W.3d 472, 478-79 (Tex. App.--Houston [14th Dist.] 2005, no pet.). (3) While incarceration alone
is not enough to show constructive abandonment, Champion's repeated and prolonged criminal
activities, the latest of which sent him to prison for nineteen years, is a consideration when
determining whether Champion is unable to provide J.J.W. a safe living environment. See S.M.L.,
171 S.W.3d at 479 (explaining that "[w]hen parents are incarcerated, they are absent from the child's
daily life and are unable to provide support, and when parents like appellant repeatedly commit
criminal acts that subject them to the possibility of incarceration, that can negatively impact a child's
living environment and emotional well-being"). 

 In addition to the continuous criminal activity in which Champion has participated, the trial
court could also consider what Champion has not done to provide J.J.W. a safe environment. See
Lumpkin, 260 S.W.3d at 528 (noting that endangerment can be shown by acts and failures to act). 
Most notably, Champion has paid almost no support over the eight years of J.J.W.'s life; the record
shows that, as of February 2009, Champion had made only one child-support payment of $12.50 in
October 2003. 

 Further, the record does not show that Champion made any significant effort to arrange for
the care of J.J.W. while Champion was incarcerated. He did provide names and contact information
for family members that, he suggested, would take in J.J.W. Nothing in the record suggests that
those family members, none of whom have ever met or seen J.J.W., would or could have provided
a safe home for J.J.W. At the hearing on his motion for new trial, Champion did not urge anything
to the contrary.

 We see a similar situation in In re Caballero, 53 S.W.3d 391, 396 (Tex. App.--Amarillo
2001, pet. denied), when an incarcerated father presented no evidence to show that someone was
available to care for his child during his incarceration, the court concluded that the trial court's
finding regarding his inability to care for the child could not be against the overwhelming weight of
the evidence. (4) When an incarcerated parent had arranged for care during the parent's incarceration
by naming that parent's mother and brother as possessory conservators with visitation rights, the
court reversed in part the trial court's order of termination. See In re E.S.S., 131 S.W.3d 632, 640
(Tex. App.--Fort Worth 2004, no pet.).

 In the post-trial hearing to determine the frivolousness of his appeal, Champion offered no
evidence and simply re-urged the factual and legal insufficiency of the evidence "based on
[Champion] being incarcerated prior to all the facts of removal in this case." Champion points to
nothing specifically that would undermine the trial court's termination order. Nothing in the post-trial argument to the trial court suggests that Champion argues any new approach or any question
overlooked or unappreciated by the trial court in making its original ruling, and the trial court had
the full evidentiary record before it. See Tex. Civ. Prac. & Rem. Code Ann. § 13.003(b); Tex.
Fam. Code Ann. Â§Â 263.405(d)(3), (g). We see nothing in Champion's argument or in the limited
record before us to suggest any abuse of discretion in the trial court's determination of frivolousness. 
The trial court did not abuse its discretion by concluding that Champion failed to present a
substantial question for appellate review.

(2) The Trial Court Did Not Abuse Its Discretion by Concluding that an Appeal of the Denial
of Bench Warrant Was Frivolous


 Since August 15, 2008, trial had been scheduled for February 11, 2009. The mandatory
dismissal date, pursuant to Section 263.401 of the Texas Family Code, was slated for March 14,
2009. See Tex. Fam. Code Ann. Â§ 263.401 (Vernon 2008). On February 2, 2009, nine days before
trial, Champion filed a motion requesting a bench warrant. The trial court noted on its denial of that
motion that Champion could participate by teleconference. 

 It is well established that litigants cannot be denied access to the courts simply because they
are inmates. In re Z.L.T., 124 S.W.3d 163, 165 (Tex. 2003). An inmate does not, however, have an
absolute right to appear in person in every court proceeding. See id. An inmate's right of access to
the courts must be weighed against the protection of our correctional system's integrity. Id. Texas
courts of appeals have recognized a variety of factors that trial courts should consider when deciding
whether to grant an inmate's request for a bench warrant. These factors include the cost and
inconvenience of transporting the prisoner to the courtroom; the security risk the prisoner presents
to the court and public; whether the prisoner's claims are substantial; whether the matter's resolution
can reasonably be delayed until the prisoner's release; whether the prisoner can and will offer
admissible, noncumulative testimony that cannot be effectively presented by deposition, telephone,
or some other means; whether the prisoner's presence is important in judging his or her demeanor
and credibility; whether the trial is to the court or a jury; and the prisoner's probability of success on
the merits. Id. at 165-66. A key consideration is whether the inmate is represented by counsel. See
Armstrong v. Randle, 881 S.W.2d 53, 57 (Tex. App.--Texarkana 1994, writ denied).

 The decision to grant or deny a request for a bench warrant lies within the trial court's
discretion. See In re J.D.S., 111 S.W.3d 324, 327 (Tex. App.--Texarkana 2003, no pet.). Acting
on a request by summarily denying the request without weighing the State's interest against an
inmate's interest is also an abuse of discretion. See id. at 328; In re D.S., 82 S.W.3d 743, 746 (Tex.
App.--Corpus Christi 2002, no pet.). However, a litigant requesting a bench warrant bears the
burden of establishing his or her right to relief, and he or she must provide factual information
demonstrating his or her need to appear. Z.L.T., 124 S.W.3d at 166; In re S.K.A., 236 S.W.3d 875,
898 (Tex. App.--Texarkana 2007), pet. denied, 260 S.W.3d 463 (Tex. 2008). The trial court does
not have a duty to independently inquire into the necessity of an inmate's appearance beyond the
contents of the bench warrant request. Z.L.T., 124 S.W.3d at 166; In re A.H.L., 214 S.W.3d 45, 50
(Tex. App.--El Paso 2006, pet. denied).

 In Z.L.T., the Texas Supreme Court disagreed with the court of appeals' holding that the trial
court had an independent duty to identify and evaluate, on the record, the relevant factors before
disposing of the father's motion seeking a bench warrant. 124 S.W.3d at 166. The court pointed out
that, in general, our rules place the burden on litigants to identify with sufficient specificity the
grounds for a ruling they seek. See id. (citing Tex. R Civ. P. 21; Tex. R. App. P. 33.1(a)(1)(A)). A
litigant's status as an inmate does not alter that burden. Id. The court focused on the fact that the
trial court had no responsibility to independently inquire into relevant facts not provided by the
moving party, emphasizing that the father's request for a bench warrant included no information by
which the trial court could assess the necessity of his appearance. Id. Although the father referenced
the relevant considerations in his request, he failed to provide any factual information showing why
his interest in appearing outweighed the impact on the correctional system: "the only pertinent
information contained in the request was that he was located in Rosharon, Texas, more than 200
miles from the trial court." Id. Ultimately, the father failed to bear his burden to establish his right
to relief and, in light of such failure, the trial court did not abuse its discretion by denying his request
for a bench warrant. Id.

 Because a trial court has no duty to go beyond a bench warrant request and independently
inquire into the necessity of an inmate's personal appearance, the inmate litigant's justification for
the bench warrant also is important in evaluating whether this appellate issue is frivolous. See id. 
Here, Champion's motion requested only that he be present at the trial, provided his address, and
asserted that his attendance was "required to achieve the ends of justice in this case." 

 The record suggests that Champion testified by telephone. At the hearing on the motion for
new trial and on appeal, Champion fails to articulate how the presentation of his case would differ
had he been allowed to attend the trial in person. The trial court did not abuse its discretion in
concluding that the bench warrant issue had no arguable basis in law or in fact. See Tex. Civ. Prac.
& Rem. Code Ann. Â§ 13.003(b); In re K.R., No. 04-05-00440-CV, 2006 Tex. App. LEXIS 5260, at
*5-6 (Tex. App.--San Antonio June 21, 2006, pet. denied) (mem. op).

 Based on our review of the limited record, we conclude that the trial court did not abuse its
discretion by making its finding of frivolousness of Champion's appeal of the sufficiency of the
evidence and of the denial of his request for a bench warrant. 

 We affirm the trial court's order.





 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 13, 2009

Date Decided: August 11, 2009


1. After the trial court signed its final order terminating Champion's parental rights, Champion
timely filed a motion for new trial and a statement of issues on appeal pursuant to Section 263.405(i)
of the Texas Family Code. Tex. Fam. Code Ann.Â§ 263.405(i) (Vernon 2008). In his statement of
points on appeal, he challenges the legal and factual sufficiency of the evidence to support the
grounds for termination and also challenges the trial court's denial of his request for a bench warrant. 
2. Champion's statement of points on appeal challenges the legal and factual sufficiency of
evidence to support each of the six grounds alleged against him, even though the trial court found
only three of those alleged grounds.
3. We recognize that M.R.J.M. and S.M.L. examine incarceration as a consideration under
Section 161.001(1)(D) and (E), but, since safe environment is an element of subsection (N), we think
evidence of endangering environment and endangering conduct is also relevant to a parent's ability
to provide a child with a safe environment. See Tex. Fam. Code Ann. Â§ 161.001(1)(N). 
4. Of course, the instant case is distinguishable from Caballero because Caballero involves
a review of a finding under Section 161.001(1)(Q) which, among other things, requires clear and
convincing evidence that the parent "knowingly engaged in criminal conduct that has resulted in the
parent's .Â .Â . confinement or imprisonment and inability to care for the child for not less than two
years from the date of filing the petition." Tex. Fam. Code Ann. Â§ 161.001(1)(Q)(ii). Section
161.001(1)(N) requires that the State present clear and convincing evidence of the parent's "inability
to provide the child with a safe environment." Tex. Fam. Code Ann. Â§Â 161.001(1)(N)(iii). 
Caballero is instructive to the degree that subsections (N) and (Q) can look to similar evidence.