111 S.W.3d 324 (2003)
In the Interest of J.D.S., a Child.
No. 06-02-00140-CV.
Court of Appeals of Texas, Texarkana.
Submitted July 11, 2003.
Decided July 17, 2003.
*325 Deanya Kueckelhan Grail, The Law Office of Deanya Kueckelhan Grail, PC, Bonham, for appellant.
Duke E. Hooten, Texas Dept. of Protective & Regulatory Services, Special Litigation Unit, Austin, for appellee.
*326 Before MORRISS, C.J., ROSS and CARTER, JJ.

OPINION
Opinion by Justice CARTER.
I. Factual and Procedural Background
Larry Sessums, Jr., appeals an order terminating the parent-child relationship between him and his son, J.D.S. On appeal, Sessums raises eight points of error. Sessums was incarcerated and was not present for the trial. We only need to address the first issue: whether the trial court erred in denying Sessums' request for a bench warrant.[1]
Sessums and Jennifer Wallace are the parents of J.D.S. The two divorced on January 19, 1999. Sessums and Wallace were appointed joint managing conservators of J.D.S., with Sessums having the right to establish the primary residence of the child. As part of the divorce decree, Sessums was required to supervise J.D.S. at all times when in the presence of Sessums' father, Larry Sessums, Sr.
The Department of Protective and Regulatory Services first began its investigation into the well-being of J.D.S. in July 1999 on a referral from Wallace that her husband's stepfather, Charles Ray Woods, had sexually abused J.D.S. At that time, J.D.S was five years old and was living with Larry Sessums, Jr. During the investigation, J.D.S. made an outcry against Larry Sessums, Sr., for sexual assault. The Department placed J.D.S. in the custody of his maternal grandparents, James and Elizabeth Hale.
Before March 29, 2000, J.D.S. made an outcry against both Larry Sessums, Jr., and Larry Sessums, Sr., for sexual assault. Both were indicted for sexual assault of J.D.S. Sessums[2] was also indicted on a separate charge for sexual assault involving a woman in his apartment complex. Later, as part of a negotiated plea agreement, Sessums pled guilty to the sexual assault of the woman at his apartment complex, and the charges against him relating to J.D.S. were dismissed. The trial court sentenced Sessums to fourteen years in prison. From that time forward, Sessums was housed at the Choice Moore Transfer facility in Bonham, Texas.
Thereafter, the Department sought to terminate the parental rights of both Wallace and Sessums to J.D.S. under the procedures provided in Chapter 161 of the Texas Family Code. See Tex. Fam.Code Ann. §§ 161.001-.211 (Vernon 2002). Wallace voluntarily relinquished her parental rights to J.D.S. On August 16, 2002, in Bonham, Texas, a bench trial was conducted to terminate Sessums' parental rights to J.D.S. Sessums was not present at the termination hearing. The trial court agreed with two of the Department's alleged grounds for termination and terminated Sessums' rights to J.D.S. Sessums now appeals.

II. Discussion
Bench Warrant
In his first point of error, Sessums contends the trial court erred by denying his *327 legitimate request to be present at his termination hearing. We agree.
Sessums requested a bench warrant in a letter mailed to the trial court on January 10, 2002. In the letter, Sessums stated that he loved J.D.S. and that he "should, at least, have input as to where [J.D.S.] is placed for the time being." (Emphasis added.) In the same letter, however, Sessums also requested to be "physically present" at "any and all proceedings" (emphasis added) concerning J.D.S. On January 17, 2002, an annotation written on Sessums' letter indicates the trial court denied Sessums' request for a bench warrant. No explanation for the denial was given.
The Department contends Sessums' letter was not a valid request to be present at his termination hearing. Rather, the Department insists Sessums wrote the January 10, 2002, letter in anticipation of a permanency hearing scheduled for February 1, 2002. The Department contends that this interpretation of the letter is supported by: (1) the fact that Sessums' letter contained a "Power of Attorney" in which he ostensibly conferred on Jessica McElroy the authority to represent him in all things concerning the custody, care, and well-being of J.D.S.; and (2) that, in his letter, Sessums stated he wanted to be present in order to provide input on where J.D.S. would be placed "for the time being." (Emphasis added.) Even if the Department is correct that Sessums wrote his letter in anticipation of the February 1, 2002, hearing, the letter also contained a request to be physically present at "any and all proceedings" (emphasis added) involving J.D.S. We interpret this as a valid request to be present at his termination hearing.
The parent-child relationship is recognized and protected by law to such a degree that it is of federal constitutional dimensions. Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (holding that the parent-child relationship is "far more precious than any property rights"). The termination of parental rights is final and ends all legal ties between the parent and child, except the child's right of inheritance. Tex. Fam.Code Ann. § 161.206(b); Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985). Because termination of parental rights is such a drastic remedy and is of such weight and gravity, due process requires the petitioner to justify termination by a heightened burden of proof of "clear and convincing evidence." See Tex. Fam.Code Ann. § 161.001. Appellate courts must carefully scrutinize judgments terminating the parent-child relationship because of the importance of the relationship. In re K.R., 63 S.W.3d 796, 800 (Tex.2001). The absence of a parent at the trial to terminate his or her parental rights is prejudicial to the parent. The parent's absence could leave the fact-finder with the impression that the proceeding is not important to the parent. Furthermore, because of the obvious negative connotations associated with a parent who is incarcerated, it is important for the fact-finder to witness the demeanor and credibility of the parent. In short, the presence, or nonpresence, of the parent in the courtroom at his or her termination hearing is vital to the fact-finder's decision to terminate a parent's rights to his or her child.
Having concluded Sessums made a valid request to be present at his termination hearing, we then review the trial court's decision to deny his request for an abuse of discretion. In re I.V., 61 S.W.3d 789, 797 (Tex.App.-Corpus Christi 2001, no pet.).
A prisoner has a constitutional right of access to the courts and may not be denied access merely because he is an *328 inmate. Id. at 796; see Hudson v. Palmer, 468 U.S. 517, 523, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Armstrong v. Randle, 881 S.W.2d 53, 56-57 (Tex.App.-Texarkana 1994, writ denied). But the right of access is not absolute; it is a qualified right. In re Z.L.T., 82 S.W.3d 100, 101 (Tex.App.-San Antonio 2002, no pet.); In re B.R.G., 48 S.W.3d 812, 819 (Tex.App.-El Paso 2001, no pet.).
In determining whether an inmate should personally attend civil court proceedings, the trial court must balance the interest of the State in preserving the integrity of the correctional system with the inmate's interest in access to the courts, with a goal of achieving a balance that is fundamentally fair. Dodd v. Dodd, 17 S.W.3d 714, 717 (Tex.App.-Houston [1st Dist.] 2000, no pet.). Factors to consider in weighing these two interests include, but are not limited to: (1) the cost and inconvenience of transporting the inmate; (2) the security risk presented by the inmate; (3) the substance of the matter; (4) the need for witnessing the inmate's demeanor; (5) whether the trial is before the jury or judge; and (6) the possibility of delaying trial until the inmate is released. I.V., 61 S.W.3d at 796.
Acting on a request by summarily denying the request without weighing the State's interest against an inmate's interest is also an abuse of discretion. See In re D.S., 82 S.W.3d 743, 746 (Tex.App.-Corpus Christi 2002, no pet.) (the trial court must weigh the interest of the plaintiff in presenting his or her testimony in person against the interest of the State in maintaining the confinement of the prisoner); see also I.V., 61 S.W.3d at 797.
Because Sessums' right to be present during court proceedings was a qualified right, the trial court should have weighed the relevant factors and had a reason for denying a bench warrant before it decided not to allow him to participate in person at the hearing. See B.R.G., 48 S.W.3d at 819-20 ("If, after considering these factors, the trial court determines that the prisoner is not entitled to appear personally, then the trial court should permit him to proceed by affidavit, deposition, telephone, or other effective means."); see also Nichols v. Martin, 776 S.W.2d 621, 623 (Tex.App.-Tyler 1989, no writ) (concluding the trial court must make pertinent inquiries regarding an appellant's request to appear); cf. Nance v. Nance, 904 S.W.2d 890, 892 (Tex.App.-Corpus Christi 1995, no writ) (the order reflects various findings demonstrating that the trial court did not arbitrarily refuse to issue the requested bench warrant). The record does not show that the trial court considered any relevant factors, but rather merely denied Sessums' request. The trial court's decision not to weigh any relevant factors was an abuse of discretion.
Sessums' first point of error is sustained, and the judgment is reversed and the cause is remanded to the trial court for a new trial. See Tex.R.App. P. 44.1; Taylor v. Taylor, 63 S.W.3d 93, 98 (Tex.App.-Waco 2001, no pet.).
NOTES
[1] Because the bench warrant issue is dispositive in this case, we do not reach the merits of Sessums' other points of error. However, with regard to Sessums' second point of errorhis claim of ineffective assistance of counselwe recognize that the Texas Supreme Court recently held that a parent has a constitutional right to effective assistance of counsel in parental termination cases. See In re M.S., ___ S.W.3d ___, No. 02-0509, 2003 WL 21512654, at *12-14, 2003 Tex. LEXIS 108, at *26-29 (July 3, 2003).
[2] All further references to "Sessums" are to Larry Sessums, Jr., unless otherwise stated.