NO. 12-05-00003-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
§APPEAL FROM THE 307TH

IN THE INTEREST OF
§JUDICIAL DISTRICT COURT OF

P.J.C., II, A CHILD
§GREGG COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Alisa Starks Allen Sprayberry appeals the termination of her parental rights. In two issues,
Alisa argues that the trial court erred in denying her request for a bench warrant and that the evidence
is factually insufficient to support the trial court’s finding that termination is in the best interest of
the child. We affirm.
 
Background
            Alisa is the mother of P.J.C., II (“P.J.C.”), born July 28, 1993. P.J.C.’s father is deceased. 
On March 18, 2004, P.J.C.’s paternal grandparents, Ollie and Welton Colbert, filed an original
petition to terminate the parent-child relationship and petition for adoption of P.J.C. At the time the
petition was filed, Alisa was in the Rusk County jail. On August 6, Alisa filed a general denial and
a motion for a bench warrant requesting to appear personally at the final hearing. At that time, she
was incarcerated at the Plane State Jail Facility Unit of the Texas Department of Criminal Justice
in Dayton, Texas serving a fifteen-year sentence as the result of a felony conviction. The trial court
denied Alisa’s motion for a bench warrant. A final hearing was held on November 1, and Alisa
participated in the hearing by conference call.
            At the conclusion of the final hearing, the trial court found, by clear and convincing evidence,
that Alisa voluntarily left the child alone or in the possession of another not the parent without
expressing an intent to return, without providing for the adequate support of the child, and remained
away for a period of at least three months; voluntarily left the child alone or in the possession of
another without providing adequate support of the child and remained away for a period of at least
six months; failed to support the child in accordance with her ability during a period of one year
ending within six months of the date of the filing of the petition; knowingly engaged in criminal
conduct that resulted in her conviction of an offense and confinement or imprisonment and inability
to care for the child for not less than two years from the date the petition was filed; and that
termination of the parent-child relationship was in the best interest of P.J.C. The trial court ordered
that the parent-child relationship between Alisa and P.J.C. be terminated. On November 19, the trial
court signed an order of termination incorporating its findings. At Alisa’s request, the trial court
filed findings of fact and conclusions of law. This appeal followed.
 
Bench Warrant
            In her first issue, Alisa argues that the trial court erred by denying her request for a bench
warrant, thereby not allowing her to participate in the trial. 
Applicable Law
            A prisoner has a constitutional right of access to the courts and may not be denied access
merely because she is an inmate. In re J.D.S., 111 S.W.3d 324, 327-28 (Tex. App.–Texarkana
2003, no pet.). However, an inmate does not have an absolute right to appear in person in every
court proceeding. In re Z.L.T., 124 S.W.3d 163, 165 (Tex. 2003). In determining whether an
inmate should personally attend court proceedings, the trial court must balance the interest of the
State in preserving the integrity of the correctional system with the inmate’s interest in access to the
courts, with a goal of achieving a balance that is fundamentally fair. In re J.D.S., 111 S.W.3d at
328; In re D.S., 82 S.W.3d 743, 745 (Tex. App.–Corpus Christi 2002, no pet.). Factors to consider
in weighing these two interests include, but are not limited to (1) the cost and inconvenience of
transporting the inmate; (2) the security risk presented by the inmate; (3) whether the inmate’s claims
are substantial; (4) the need for witnessing the inmate’s demeanor and credibility; (5) whether the
trial is before the jury or judge; (6) the possibility of delaying trial until the inmate is released; (7)
the inmate’s probability of success on the merits; (8) whether the inmate is represented by counsel
or is pro se; and (9) whether the inmate can and will offer admissible, noncumulative testimony that
cannot be effectively presented by deposition, telephone, or some other means. In re Z.L.T., 124
S.W.3d at 165-66; In re J.D.S., 111 S.W.3d at 328; In re D.S., 82 S.W.3d at 745; In re I.V., 61
S.W.3d 789, 796 (Tex. App.–Corpus Christi 2001), disapproved on other grounds, In re J.F.C., 96
S.W.3d 256, 267 (Tex. 2002). We review the trial court’s determination under an abuse of discretion
standard. In re D.S., 82 S.W.3d at 745; In re B.R.G., 48 S.W.3d 812, 820 (Tex. App.–El Paso 2001,
no pet.).
            A trial court’s findings of fact are binding on an appellate court unless they are so contrary
to the great preponderance of the evidence as to show a clear abuse of discretion. In re Ferguson,
927 S.W.2d 766, 769 (Tex. App.–Texarkana 1996, no writ). In the absence of such a clear abuse of
discretion, an appellate court should not substitute its judgment for that of the trial court. Id.
Analysis
             In the instant case, the trial court and Alisa’s counsel discussed Alisa’s requested bench
warrant. As a result of the discussion, Alisa’s counsel stated in a memorandum to the trial court
coordinator that she believed a conference call during the final hearing would be sufficient for Alisa
to defend her position. At the final hearing, Alisa participated by telephone conference call, testified,
and was cross-examined by opposing counsel and the amicus attorney. 
            In its findings of fact, the trial court stated that it denied Alisa’s motion for a bench warrant
after the conference with Alisa’s counsel. According to the trial court, its denial was based on the
following factors: (1) the distance from Longview, Texas to Plane State Jail in Dayton, Texas; (2)
the expense of transporting Alisa to and from Dayton, Texas; (3) the unnecessary delay in resetting
the case until Alisa’s release from jail; (4) the scheduling of the trial as a bench trial and not a jury
trial; (5) Alisa’s participation in the entire bench trial by telephone; (6) Alisa’s representation by a
competent attorney during the entire bench trial; and (7) Alisa’s right to testify during the bench trial
and to listen to the testimony of the other witnesses and the argument of the attorneys. 
            The trial court’s findings of fact demonstrate that it did not arbitrarily refuse to issue the
requested bench warrant. Moreover, we are bound by the trial court’s findings unless they are so
contrary to the great weight and preponderance of the evidence as to show a clear abuse of discretion.
See In re Ferguson, 927 S.W.2d at 769. Alisa does not point to any evidence in the record to show
that the trial court’s findings were contrary to the great weight and preponderance of the evidence.
Because the trial court weighed the relevant factors in considering whether to issue the bench warrant
and Alisa’s trial counsel agreed that her participation by conference call was sufficient, the trial court
did not abuse its discretion by refusing to issue the bench warrant. Alisa’s first issue is overruled.
 
Evidentiary Sufficiency
            In her second issue, Alisa argues that the evidence is factually insufficient to support the trial
court’s finding that termination is in the best interest of the child. The Colberts disagree, arguing
that there is overwhelming evidence that termination was in the child’s best interest and
recommended by the amicus attorney.
Termination of Parental Rights
            Involuntary termination of parental rights embodies fundamental constitutional rights. Vela
v. Marywood, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), pet. denied per curiam, 53 S.W.3d 684
(Tex. 2001); In re J.J., 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). A
termination decree is “complete, final, irrevocable [and] divests for all time the parent and child of
all legal rights, privileges, duties, and powers with respect to each other except for the child’s right
to inherit.” Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976); In re Shaw, 966 S.W.2d 174, 179
(Tex. App.–El Paso 1998, no pet.) Thus, breaking the bonds between a parent and child “can never
be justified without the most solid and substantial reasons.” Wiley, 543 S.W.2d at 352. Because a
termination action “permanently sunders” those bonds, the proceedings must be strictly scrutinized. 
Id.; In re Shaw, 966 S.W.2d at 179. However, parental rights are not absolute, and it is vital that
the emotional and physical interests of the child not be sacrificed at the expense of preserving that
right. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).
            Section 161.001 of the Family Code permits a court to order termination of parental rights
if two elements are established. Tex. Fam. Code Ann. § 161.001 (Vernon 2002); In re J.M.T., 39
S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one
of the acts or omissions itemized in the first subsection of the statute. Tex. Fam. Code Ann.
 § 161.001(1) (Vernon 2002); Green v. Texas Dep’t of Protective & Regulatory Servs., 25 S.W.3d
213, 219 (Tex. App.–El Paso 2000, no pet.); In re J.M.T., 39 S.W.3d at 237. Second, termination
must be in the best interest of the child. Tex. Fam. Code Ann. § 161.001(2) (Vernon 2002); In re
J.M.T., 39 S.W.3d at 237. Additionally, both elements must be established by clear and convincing
evidence, and proof of one element does not alleviate the petitioner’s burden of proving the other.
Tex. Fam. Code Ann. § 161.001; Wiley, 543 S.W.2d at 351; In re J.M.T., 39 S.W.3d at 237. 
            Due process requires a petitioner to justify termination by clear and convincing evidence
because termination is such a drastic remedy. In re J.M.T., 39 S.W.3d at 237. The clear and
convincing standard for termination of parental rights is both constitutionally and statutorily
mandated. Tex. Fam. Code Ann. § 161.001; In re J.J., 911 S.W.2d at 439. Clear and convincing
evidence means “the measure or degree of proof that will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be established.” Tex. Fam. Code
Ann. § 101.007 (Vernon 2002). There is a strong presumption that the best interest of the child is
served by preserving the parent-child relationship. Wiley, 543 S.W.2d at 352; In re J.M.T., 39
S.W.3d at 240. Thus, the burden of proof is upon the person seeking to deprive the parent of their
parental rights. In re J.M.T., 39 S.W.3d at 240.
Standard of Review
            The appropriate standard for reviewing a factual sufficiency challenge to the termination
findings is whether the evidence is such that a fact finder could reasonably form a firm belief or
conviction about the truth of the petitioner’s allegations. In re C.H., 89 S.W.3d at 25. In
determining whether the fact finder has met this standard, an appellate court considers all the
evidence in the record, both that in support of and contrary to the trial court’s findings. Id. at 27-29.
Further, an appellate court should consider whether disputed evidence is such that a reasonable fact
finder could not have reconciled that disputed evidence in favor of its finding. In re J.F.C., 96
S.W.3d at 266. If the disputed evidence is so significant that a fact finder could not reasonably have
formed a firm belief or conviction, then the evidence is factually insufficient. Id. An appellate court
should specify its reasons for concluding that a reasonable trier of fact could not have attributed
disputed evidence in favor of the finding. Id. at 266-67.
            This standard retains the deference an appellate court must have for the fact finder’s role. 
In re C.H., 89 S.W.3d at 26. Additionally, the trier of fact is the exclusive judge of the credibility
of the witnesses and the weight to be given their testimony. Nordstrom v. Nordstrom, 965 S.W.2d
575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied). Thus, our review must not be so
rigorous that only fact findings established beyond a reasonable doubt could withstand review. In
re C.H., 89 S.W.3d at 26.
Best Interest of the ChildIn determining the best interest of the child, a number of factors have been considered
including (1) the desires of the child; (2) the emotional and physical needs of the child now and in
the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental
abilities of the individuals seeking custody; (5) the programs available to assist these individuals;
(6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions
of the parent which may indicate that the existing parent-child relationship is not a proper one; and
(9) any excuse for the acts or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 371-72
(Tex. 1976).
            This list is not exhaustive, but simply indicates considerations that have been or could be
pertinent. Id. However, the best interest of the child does not require proof of any unique set of
factors nor limit proof to any specific factors. In re D.M., 58 S.W.3d 801, 814 (Tex. App.–Fort
Worth 2001, no pet.). The Holley test focuses on the best interest of the child, not the parent’s best
interest. Dupree v. Texas Dep’t of Protective & Regulatory Servs., 907 S.W.2d 81, 86 (Tex.
App.–Dallas 1995, no writ). While incarceration is a factor in determining the best interest of a
child, it is not dispositive. In re C.T.E., 95 S.W.3d 462, 466 (Tex. App.–Houston [1st Dist.] 2002,
pet. denied). In determining the weight of this factor, the court should consider the expected length
of an appellant’s imprisonment and whether it can be inferred from an appellant’s criminal conduct
that she has endangered the safety of the child. Id.
Analysis
            The evidence at trial showed that P.J.C.’s father died one year ago and, at the time of the
hearing, P.J.C. was eleven years old. The Department of Child Protective Services placed P.J.C. 
with Ollie when the child was almost one year old. In 1994, a court appointed Ollie and Welton
permanent managing conservators of the child. Since 1994, P.J.C. had lived with them. 
            The amicus attorney testified that he had met with P.J.C., Ollie, Welton, and Alisa. 
According to the amicus attorney, the child saw Ollie and Welton as the only true parents he had ever
known even though he recognized that they were his grandparents. P.J.C. wanted his mother’s
parental rights terminated and to be adopted by his grandparents. However, Alisa testified that
termination should not be granted because P.J.C. did not know her. In fact, Alisa stated that the child
did not know whether he wanted her rights terminated, commenting “[h]ow would he know if he’s
never met me.” Then, Alisa seemed to retract her statement and testified that the child knew her, but
only in passing. Alisa acknowledged that P.J.C. had told his amicus attorney that Alisa was
“essentially a stranger.” She admitted that was accurate, but testified that simply because she had
not seen P.J.C. did not mean that they did not have a great relationship. 
            Alisa stated that she loved P.J.C., that she was not the same person she used to be, and that
she could be a blessing to the child. She admitted she had a long way to go, but believed that she
could be a good mother to P.J.C. and would like an opportunity to be in P.J.C.’s life. Alisa believed
that terminating her rights would hurt P.J.C. and she wanted the child to make his own judgment of
her. Further, Alisa stated that she was not going away and that she was not a problem that “you
[could] sweep under the rug.” She requested the trial court retain Ollie and Welton as P.J.C.’s
conservators instead of granting termination of her parental rights.
            Ollie and Welton testified that they wanted to adopt P.J.C. and believed that termination of
Alisa’s parental rights was in P.J.C.’s best interest. All evidence led the amicus attorney to believe
that there had been a “significant” lack of contact between the child and Alisa for a “significant”
period of time and that there was a “total” lack of a maternal bond and relationship between the child
and his mother. The amicus attorney testified that terminating Alisa’s parental rights and adoption
by the grandparents was in P.J.C.’s best interest and recommended the same to the trial court.
            Ollie testified that Alisa last saw P.J.C. approximately seven years ago. Alisa testified that
the last time she saw P.J.C. was before the start of the school year before his father died, admittedly
eighteen months to two years ago. Alisa stated that it would surprise her to learn that P.J.C. told the
amicus attorney that he had last seen his mother approximately six years ago. She admitted that her
last possession and custody of P.J.C. was just before his first birthday. Further, she acknowledged
that she had never petitioned the court to gain custody of P.J.C.
            Although Alisa was ordered to pay child support in 1998, her last child support payment was
on March 2, 1999. According to Alisa, she had not been able to pay child support since 1999. 
However, Alisa believed she was no longer required to pay child support because she requested that
child support go to Ollie, not P.J.C.’s father. She was under the impression that Ollie had to change
the child support before she was required to pay it.
            Alisa was arrested on a drug-related charge, found guilty of a first degree felony, and
sentenced in February of 2004 to fifteen years of imprisonment. She also stated that she was “up”
for parole in July of 2005. Alisa admitted that her current incarceration was not the first time that she
had been arrested or incarcerated. In fact, Alisa acknowledged that she was given three years of
probation on another charge, violated that probation, resulting in jail time, and was convicted of credit
card abuse in 1989. On her release from prison, she planned to go home, straighten up, and get her
children back. Because she had been an addict and imprisoned, there were various places she could
go for help including Mental Health and Mental Retardation and Woodbine. Further, Alisa stated that
she had a family support network through her husband and his family.
            In its extensive findings of fact and conclusions of law, the trial court found that it was in
P.J.C.’s best interest to grant termination of Alisa’s parental rights based on the following factors: (1)
Alisa’s complete lack of involvement in P.J.C.’s life over the previous ten years; (2) the child’s desire
to be adopted by his paternal grandparents, whom he loved dearly and considered for all purposes to
be his parents; (3) Ollie and Welton’s strong emotional and physical support for P.J.C. over the last
ten years and P.J.C.’s strong emotional attachment to them; (4) Alisa’s complete lack of parenting
skills as evidenced by her emotional and physical abandonment of P.J.C.; (5) Alisa’s failure to
emotionally bond with the child as evidenced by her failure to contact him, visit him, or have any
connection with him; and (6) Alisa’s criminal history including her incarceration for a fifteen-year
sentence for manufacturing/distributing a controlled substance thereby making her completely
unavailable physically and emotionally to the child. 
            We are bound by the trial court’s findings unless they are so contrary to the great weight and
preponderance of the evidence as to show a clear abuse of discretion. See In re Ferguson, 927
S.W.2d at 769. Based upon our review of the record, we cannot say that the trial court’s findings
were contrary to the great weight and preponderance of the evidence. Moreover, although there may
be some conflicting evidence regarding Alisa’s love for and ability to parent her child, this disputed
evidence was not so significant that a reasonable trier of fact could not have reconciled this evidence
in favor of its finding and formed a firm belief or conviction that terminating Alisa’s parental rights
is in the best interest of the child. Accordingly, Alisa’s second issue is overruled.
 
Disposition
            Having overruled the issues presented by Alisa in this appeal, the judgment of the trial court
is affirmed.
 
 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered July 29, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
(PUBLISH)