

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00030-CV

_____

IN THE INTEREST OF J.J.W., A CHILD

On Appeal from the 307th Judicial District Court
Gregg County, Texas
Trial Court No. 2007-2037-DR

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Michael Champion (a) never had a relationship with his natural son, J.J.W.; (b) paid only one child support payment ($12.50 in October 2003) for J.J.W.; (c) was most recently convicted in June 2007 of possession of a controlled substance with intent to deliver and was sentenced to nineteen years' imprisonment; (d) spent much of the twelve years before 2007 incarcerated for various other offenses; and (e) has not made any significant effort to arrange for J.J.W.'s care while Champion was incarcerated. The trial court ordered Champion's parental rights to J.J.W. terminated and then denied Champion's motion for new trial and found that Champion's appeal asserting the legal and factual insufficiency of the evidence was frivolous, as was his appeal of the denial of a bench warrant. Champion, an inmate of the Texas Department of Criminal Justice–Institutional Division, appeals[1] the trial court's order denying his motion for new trial and finding frivolous his appeal from the trial court's order terminating his parental rights to the now-eight-year-old J.J.W. *See* TEX. FAM. CODE ANN. § 263.405(d)(3) (Vernon 2008). We affirm those findings of the trial court because (1) the trial court did not abuse its discretion by concluding that Champion's legal and factual sufficiency points on appeal were frivolous, and (2) the trial court did not abuse its discretion by concluding that Champion's appeal of the denial of bench warrant was frivolous.

---

[1]After the trial court signed its final order terminating Champion's parental rights, Champion timely filed a motion for new trial and a statement of issues on appeal pursuant to Section 263.405(i) of the Texas Family Code. TEX. FAM. CODE ANN.§ 263.405(i) (Vernon 2008). In his statement of points on appeal, he challenges the legal and factual sufficiency of the evidence to support the grounds for termination and also challenges the trial court's denial of his request for a bench warrant.

The Texas Family Code provides the following procedure for seeking review of an order terminating parental rights:

> (d)     The trial court shall hold a hearing not later than the 30th day after the date the final order is signed to determine whether:
>
> > (1)     a new trial should be granted;
> >
> > (2)     a party's claim of indigence, if any, should be sustained; and
> >
> > (3)     the appeal is frivolous as provided by Section 13.003(b), Civil Practice and Remedies Code.

TEX. FAM. CODE ANN. § 263.405(d)(3).

Section 263.405(g) limits the scope of appellate review to the trial court's determination that the appeal is frivolous:

> (g)     The appellant may appeal the court's order denying the appellant's claim of indigence or the court's finding that the appeal is frivolous by filing with the appellate court the reporter's record and clerk's record of the hearing held under this section, both of which shall be provided without advance payment, not later than the 10th day after the date the court makes the decision. The appellate court shall review the records and may require the parties to file appellate briefs on the issues presented, but may not hear oral argument on the issues. The appellate court shall render appropriate orders after reviewing the records and appellate briefs, if any.

TEX. FAM. CODE ANN. § 263.405(g) (Vernon 2008); *see In re K.D.*, 202 S.W.3d 860, 865 (Tex. App.—Fort Worth 2006, no pet.).

"In determining whether an appeal is frivolous, a judge may consider whether the appellant has presented a substantial question for appellate review." TEX. CIV. PRAC. & REM. CODE ANN. § 13.003(b) (Vernon 2002); *see Lumpkin v. Dep't of Family & Protective Servs.*, 260 S.W.3d 524

3

(Tex. App.—Houston [1st Dist] 2008, no pet.). An appeal is frivolous when it lacks an arguable basis either in law or in fact. *See K.D.*, 202 S.W.3d at 866. We review for an abuse of discretion the trial court's determination that an appeal is frivolous. *In re M.N.V.*, 216 S.W.3d 833, 834 (Tex. App.—San Antonio 2006, no pet.); *K.D.*, 202 S.W.3d at 866.

An appeal of a termination order is limited to the issues presented in the statement of points. *See* TEX. FAM. CODE ANN. § 263.405(i). That said, if a trial court determines that an appeal is frivolous, the court has necessarily determined that each of the issues identified in the statement of points is frivolous and that they lack an arguable basis in law or fact. *See Lumpkin*, 260 S.W.3d at 527; *In re S.T.*, 263 S.W.3d 394, 398 (Tex. App.—Waco 2008, pet. denied).

Due process requires the petitioner to justify termination of parental rights by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (Vernon 2008); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). The higher burden of proof in termination cases elevates the appellate standard of both legal and factual sufficiency review. *See J.F.C.*, 96 S.W.3d at 265; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In doing a legal-sufficiency review in parental rights termination cases, a court must review all of the evidence in the light most favorable to the verdict and determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction that the grounds for termination were proven. *J.F.C.*, 96 S.W.3d at 265–66. In a factual sufficiency review, in determining whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction that its finding was true, a court must consider whether disputed

4

evidence is such that a reasonable fact-finder could not have resolved it in favor of the finding. *Id.* at 266.

When the trial court conducts a frivolousness hearing on an appellant's proposed legal and factual sufficiency issues, the trial court should apply the standards of review applicable to clear and convincing evidence as set out above. *K.D.*, 202 S.W.3d at 867–68. With respect to the sufficiency of the evidence, the question before this Court, then, is whether the trial court abused its discretion in its review of the sufficiency of the evidence.

*(1)     The Trial Court Did Not Abuse Its Discretion by Concluding that Legal and Factual Sufficiency Points for Appeal Were Frivolous*

Champion's statement of points on appeal allege that legally and factually insufficient evidence supports the trial court's findings as to specific grounds under Section 161.001(1).[2] In its final order, the trial court found that clear and convincing evidence supported three grounds on which to terminate Champion's parental rights; those grounds are outlined in Sections 161.001(1)(D), (E), and (N):

> knowingly placed or knowingly allowed the child, [J.J.W.], to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>
>       . . . .

---

[2]Champion's statement of points on appeal challenges the legal and factual sufficiency of evidence to support each of the six grounds alleged against him, even though the trial court found only three of those alleged grounds.

engaged in conduct or knowingly placed the child, [J.J.W.], with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

. . . .

constructively abandoned the child, [J.J.W.], who has been in the temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the child to the father; (2) the father has not regularly visited or maintained significant contact with the child; and (3) the father has demonstrated an inability to provide the child with a safe environment.

Sufficient evidence of only one of those three predicate grounds, along with the requisite finding that termination is in the best interest of the child, is sufficient to support the trial court's termination order. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The procedural posture of this case calls on us to determine whether the trial court abused its discretion when it decided that a legal and factual sufficiency challenge to this finding failed to present a substantial question for review.

We consider the trial court's finding in light of the evidence of constructive abandonment. *See In re J.J.O.*, 131 S.W.3d 618, 630 (Tex. App.—Fort Worth 2004, no pet.). The Texas Family Code provides the required elements to support termination on the ground of constructive abandonment:

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:

(1) that the parent has:

. . . .

6

(N)　　constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:

(i)　　the department or authorized agency has made reasonable efforts to return the child to the parent;

(ii)　　the parent has not regularly visited or maintained significant contact with the child; and

(iii)　　the parent has demonstrated an inability to provide the child with a safe environment.

TEX. FAM. CODE ANN. § 161.001(1)(N); *see J.J.O.*, 131 S.W.3d at 628–30 (holding evidence sufficient to support finding of constructive abandonment); *In re H.R.*, 87 S.W.3d 691, 699–700 (Tex. App.—San Antonio 2002, no pet.) (same). A parent's imprisonment, in and of itself, does not constitute "abandonment" of a child for purposes of termination of parental rights. *In re D.T.*, 34 S.W.3d 625, 633–34 (Tex. App.—Fort Worth 2000, pet. denied).

The clerk's record before us reveals that the parent-child relationship, in the legal sense, between Champion and J.J.W. was established in July 2003. After J.J.W.'s mother was arrested and no family was available to provide adequate care, J.J.W. was taken into the custody of the Texas Department of Family and Protective Services (the Department) on September 7, 2007. This evidence establishes that J.J.W. has been in the Department's custody "not less than six months" as required under Section 161.001(1)(N).

At the hearing on the motion for new trial, the State summarized the evidence for the trial court:

> And I do believe that the grounds and the evidence in this case, especially because Mr. Champion did testify [via telephone] . . . that he never had a relationship with this child, that he never saw the child, never obtained court orders to see this child or to establish his paternity, that he never paid child support -- well, he was established -- his paternity had been established, he did not pay child support, did not support this child in any way during the pendency of our case, did not complete any of the courses or programs that are offered in prison. He said he was working on those but had not completed those. And that showing that he had engaged in conduct, of course, that he was in prison for distribution -- possession and distribution of illegal substance. We do believe -- and on best interest, would show that [Champion] is in no position to parent this child, and he had never established a relationship with the child, never supported the child. And that the child would be eligible for adoption, would be able to have a permanent home and has done well in foster care.

Champion presented no new evidence to the trial court and explicitly stated that there was none. *See In re A.S.*, 239 S.W.3d 390, 393 (Tex. App.—Beaumont 2007, no pet.) (pointing out that, at hearing on motion for new trial, "[t]he Department described evidence that would support its alleged grounds for termination" and that parent "did not identify evidence from the trial that would arguably support an argument that the jury could not reasonably have formed a firm belief or conviction as to the truth of the allegations"). As far as his arguments to the trial court, Champion focused on the bench warrant issue and lodged only general assertions regarding the sufficiency of the evidence, once pointing out that the caseworker involved never met with Champion.

To the extent that Champion's assertion concerning no visits from the caseworker raised the Section 161.001(1)(N) requirement that reasonable efforts be made to return the child to the parent,

8

we note that there is some authority that would suggest that the element concerning reasonable efforts to return the child is inapplicable when the parent is incarcerated. *See D.T.*, 34 S.W.3d at 633. Regardless, implementation of a family service plan by the Department is generally considered a reasonable effort to return a child to the parent. *See In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.); *In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.). Here, the Department did implement a family service plan with respect to Champion, a plan with which he apparently failed to comply. So, whether or not the Department was required, under these circumstances, to present evidence that it made reasonable efforts to return J.J.W. to Champion, it did so by establishing that it implemented a family service plan for Champion. Evidence that the caseworker did not meet with Champion does not raise a substantial issue for appellate review on these facts.

The record also shows that Champion did not regularly visit or maintain significant contact with J.J.W. In the eight years of J.J.W.'s life, Champion has never seen or met the child even when he was not incarcerated. Nor has any of his family.

With respect to evidence of Champion's failure to provide a safe environment for J.J.W., the trial court had before it Champion's criminal history showing that he has repeatedly been convicted of possession of a controlled substance. A series of convictions, community supervisions, revocations, and incarcerations for offenses, centered primarily on charges of possession of controlled substances, have resulted in Champion having spent a good deal of the time between 1995

9

and the present incarcerated. In June 2007, his most recent conviction, for the first-degree felony offense of possession of controlled substance with the intent to deliver, resulted in a sentence of nineteen years' imprisonment. Champion's repeated convictions and resulting prolonged incarceration is a factor that may be considered. *See M.R.J.M.*, 280 S.W.3d at 503; *In re S.M.L.*, 171 S.W.3d 472, 478–79 (Tex. App.—Houston [14th Dist.] 2005, no pet.).[3] While incarceration alone is not enough to show constructive abandonment, Champion's repeated and prolonged criminal activities, the latest of which sent him to prison for nineteen years, is a consideration when determining whether Champion is unable to provide J.J.W. a safe living environment. *See S.M.L.*, 171 S.W.3d at 479 (explaining that "[w]hen parents are incarcerated, they are absent from the child's daily life and are unable to provide support, and when parents like appellant repeatedly commit criminal acts that subject them to the possibility of incarceration, that can negatively impact a child's living environment and emotional well-being").

In addition to the continuous criminal activity in which Champion has participated, the trial court could also consider what Champion has not done to provide J.J.W. a safe environment. *See Lumpkin*, 260 S.W.3d at 528 (noting that endangerment can be shown by acts and failures to act). Most notably, Champion has paid almost no support over the eight years of J.J.W.'s life; the record

---

[3]We recognize that *M.R.J.M.* and *S.M.L.* examine incarceration as a consideration under Section 161.001(1)(D) and (E), but, since safe environment is an element of subsection (N), we think evidence of endangering environment and endangering conduct is also relevant to a parent's ability to provide a child with a safe environment. *See* TEX. FAM. CODE ANN. § 161.001(1)(N).

shows that, as of February 2009, Champion had made only one child-support payment of $12.50 in October 2003.

Further, the record does not show that Champion made any significant effort to arrange for the care of J.J.W. while Champion was incarcerated. He did provide names and contact information for family members that, he suggested, would take in J.J.W. Nothing in the record suggests that those family members, none of whom have ever met or seen J.J.W., would or could have provided a safe home for J.J.W. At the hearing on his motion for new trial, Champion did not urge anything to the contrary.

We see a similar situation in *In re Caballero*, 53 S.W.3d 391, 396 (Tex. App.—Amarillo 2001, pet. denied), when an incarcerated father presented no evidence to show that someone was available to care for his child during his incarceration, the court concluded that the trial court's finding regarding his inability to care for the child could not be against the overwhelming weight of the evidence.[4] When an incarcerated parent *had* arranged for care during the parent's incarceration by naming that parent's mother and brother as possessory conservators with visitation rights, the

---

[4]Of course, the instant case is distinguishable from *Caballero* because *Caballero* involves a review of a finding under Section 161.001(1)(Q) which, among other things, requires clear and convincing evidence that the parent "knowingly engaged in criminal conduct that has resulted in the parent's . . . confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." TEX. FAM. CODE ANN. § 161.001(1)(Q)(ii). Section 161.001(1)(N) requires that the State present clear and convincing evidence of the parent's "inability to provide the child with a safe environment." TEX. FAM. CODE ANN. § 161.001(1)(N)(iii). *Caballero* is instructive to the degree that subsections (N) and (Q) can look to similar evidence.

11

court reversed in part the trial court's order of termination. *See In re E.S.S.*, 131 S.W.3d 632, 640 (Tex. App.—Fort Worth 2004, no pet.).

In the post-trial hearing to determine the frivolousness of his appeal, Champion offered no evidence and simply re-urged the factual and legal insufficiency of the evidence "based on [Champion] being incarcerated prior to all the facts of removal in this case." Champion points to nothing specifically that would undermine the trial court's termination order. Nothing in the post-trial argument to the trial court suggests that Champion argues any new approach or any question overlooked or unappreciated by the trial court in making its original ruling, and the trial court had the full evidentiary record before it. *See* Tex. Civ. Prac. & Rem. Code Ann. § 13.003(b); Tex. Fam. Code Ann. § 263.405(d)(3), (g). We see nothing in Champion's argument or in the limited record before us to suggest any abuse of discretion in the trial court's determination of frivolousness. The trial court did not abuse its discretion by concluding that Champion failed to present a substantial question for appellate review.

*(2)      The Trial Court Did Not Abuse Its Discretion by Concluding that an Appeal of the Denial of Bench Warrant Was Frivolous*

Since August 15, 2008, trial had been scheduled for February 11, 2009. The mandatory dismissal date, pursuant to Section 263.401 of the Texas Family Code, was slated for March 14, 2009. *See* Tex. Fam. Code Ann. § 263.401 (Vernon 2008). On February 2, 2009, nine days before trial, Champion filed a motion requesting a bench warrant. The trial court noted on its denial of that motion that Champion could participate by teleconference.

It is well established that litigants cannot be denied access to the courts simply because they are inmates. *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003). An inmate does not, however, have an absolute right to appear in person in every court proceeding. *See id.* An inmate's right of access to the courts must be weighed against the protection of our correctional system's integrity. *Id.* Texas courts of appeals have recognized a variety of factors that trial courts should consider when deciding whether to grant an inmate's request for a bench warrant. These factors include the cost and inconvenience of transporting the prisoner to the courtroom; the security risk the prisoner presents to the court and public; whether the prisoner's claims are substantial; whether the matter's resolution can reasonably be delayed until the prisoner's release; whether the prisoner can and will offer admissible, noncumulative testimony that cannot be effectively presented by deposition, telephone, or some other means; whether the prisoner's presence is important in judging his or her demeanor and credibility; whether the trial is to the court or a jury; and the prisoner's probability of success on the merits. *Id.* at 165–66. A key consideration is whether the inmate is represented by counsel. *See Armstrong v. Randle*, 881 S.W.2d 53, 57 (Tex. App.—Texarkana 1994, writ denied).

The decision to grant or deny a request for a bench warrant lies within the trial court's discretion. *See In re J.D.S.*, 111 S.W.3d 324, 327 (Tex. App.—Texarkana 2003, no pet.). Acting on a request by summarily denying the request without weighing the State's interest against an inmate's interest is also an abuse of discretion. *See id.* at 328; *In re D.S.*, 82 S.W.3d 743, 746 (Tex. App.—Corpus Christi 2002, no pet.). However, a litigant requesting a bench warrant bears the

burden of establishing his or her right to relief, and he or she must provide factual information demonstrating his or her need to appear. *Z.L.T.*, 124 S.W.3d at 166; *In re S.K.A.*, 236 S.W.3d 875, 898 (Tex. App.—Texarkana 2007), *pet. denied*, 260 S.W.3d 463 (Tex. 2008). The trial court does not have a duty to independently inquire into the necessity of an inmate's appearance beyond the contents of the bench warrant request. *Z.L.T.*, 124 S.W.3d at 166; *In re A.H.L.*, 214 S.W.3d 45, 50 (Tex. App.—El Paso 2006, pet. denied).

In *Z.L.T.*, the Texas Supreme Court disagreed with the court of appeals' holding that the trial court had an independent duty to identify and evaluate, on the record, the relevant factors before disposing of the father's motion seeking a bench warrant. 124 S.W.3d at 166. The court pointed out that, in general, our rules place the burden on litigants to identify with sufficient specificity the grounds for a ruling they seek. *See id.* (citing TEX. R CIV. P. 21; TEX. R. APP. P. 33.1(a)(1)(A)). A litigant's status as an inmate does not alter that burden. *Id.* The court focused on the fact that the trial court had no responsibility to independently inquire into relevant facts not provided by the moving party, emphasizing that the father's request for a bench warrant included no information by which the trial court could assess the necessity of his appearance. *Id.* Although the father referenced the relevant considerations in his request, he failed to provide any factual information showing why his interest in appearing outweighed the impact on the correctional system: "the only pertinent information contained in the request was that he was located in Rosharon, Texas, more than 200 miles from the trial court." *Id.* Ultimately, the father failed to bear his burden to establish his right

14

to relief and, in light of such failure, the trial court did not abuse its discretion by denying his request for a bench warrant. *Id.*

Because a trial court has no duty to go beyond a bench warrant request and independently inquire into the necessity of an inmate's personal appearance, the inmate litigant's justification for the bench warrant also is important in evaluating whether this appellate issue is frivolous. *See id.* Here, Champion's motion requested only that he be present at the trial, provided his address, and asserted that his attendance was "required to achieve the ends of justice in this case."

The record suggests that Champion testified by telephone. At the hearing on the motion for new trial and on appeal, Champion fails to articulate how the presentation of his case would differ had he been allowed to attend the trial in person. The trial court did not abuse its discretion in concluding that the bench warrant issue had no arguable basis in law or in fact. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 13.003(b); *In re K.R.*, No. 04-05-00440-CV, 2006 Tex. App. LEXIS 5260, at *5–6 (Tex. App.—San Antonio June 21, 2006, pet. denied) (mem. op).

Based on our review of the limited record, we conclude that the trial court did not abuse its discretion by making its finding of frivolousness of Champion's appeal of the sufficiency of the evidence and of the denial of his request for a bench warrant.

We affirm the trial court's order.

Josh R. Morriss, III
Chief Justice

Date Submitted:    July 13, 2009
Date Decided:    August 11, 2009

16