

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-17-00307-CV

IN THE INTEREST OF J.H., A.H., J.H., L.H., AND H.H., CHILDREN

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 86,090-D, Honorable Carry Baker, Presiding

December 11, 2017

MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

Appellants, B.P. (Mother) and R.H. (Father), appeal the trial court's order terminating their parental rights to their children J.H., A.H., J.H., L.H., and H.H.[1] We will affirm.

Background

Mother and Father are the parents of J.H., A.H., J.H., L.H., and H.H., who at the time of trial ranged in age from two to seven. In 2011, the Texas Department of Family

---

[1] To protect the children's privacy, we will refer to the parents as "Mother" and "Father" and to the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b).

and Protective Services removed Mother and Father's children[2] from the home due to Father's methamphetamine use and the "deplorable" conditions of the home. The children were returned to the home in 2012 after Mother and Father completed services.

In October of 2014, the Department received a report of neglectful supervision, prompting another investigation into the couple's care of the children.[3] The Department investigated and found that the family's home had no running water, the children all slept on the floor, and the children were very dirty, having not been bathed in at least a week. Additionally, Father admitted to using methamphetamines and marijuana. The Department removed the children from the home. The Department was appointed the temporary managing conservator of the oldest four children on October 24, and of newborn J.H. on December 31.

The Department developed two family service plans during the course of the case. Both plans required that Mother and Father maintain safe, stable housing; maintain stable, verified employment; follow therapy recommendations; and report address changes. The plans also prohibited the use of alcohol and drugs.

In March of 2016, the Department facilitated a monitored return of the children. The monitored return was not completely successful, and in August of 2016, the Department sought to remove the children from the home again. The children remained in the home, but additional requirements were set forth for Mother and Father, including that they were to complete a budgeting class and refrain from consuming alcohol or

---

[2] The 2011 removal predated the births of some of the five children involved in the present lawsuit.

[3] At that time, Mother was pregnant with the youngest child, J.H., who was born approximately one month later.

smoking in the home.  Additionally, Father was not to return to the home until he passed a drug screen.  In January of 2017, the family (including Father) moved without notifying the Department.  The Department sought re-removal, which the court authorized.

The final hearing on the merits commenced on June 5, 2017, was recessed, and reconvened on July 19.  After hearing the evidence, the trial court terminated Mother and Father's parental rights to the children, finding they had violated Texas Family Code § 161.001(b)(1)(D), (E), and (O), and that termination would be in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2016).[4]  The trial court appointed the Department as the permanent managing conservator of the children.  Mother and Father both appealed, challenging the legal and factual sufficiency of the evidence supporting the order of termination.

## Standard of Review

The natural right between parents and their children is one of constitutional dimensions.  *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976).  However, while parental rights are of constitutional magnitude, they are not absolute.  A child's emotional and physical interests must not be sacrificed merely to preserve the parent's rights.  *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Under Texas law, to terminate parental rights, it must be proven by clear and convincing evidence that a parent has committed one or more of the acts and/or omissions identified in section 161.001(b)(1) (referred to hereafter as "statutory predicate

---

[4] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

grounds") and that termination is in the child's best interest. *See* § 161.001(b). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014). Only one statutory predicate ground is required to support termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied).

In a legal sufficiency challenge, the reviewing court must credit evidence that supports the verdict if a reasonable factfinder could have done so, and disregard contrary evidence unless a reasonable factfinder could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). However, the court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases that require clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If it determines that no reasonable factfinder could form a firm belief or conviction that the matter to be proven is true, the reviewing court must conclude that the evidence is legally insufficient. *In re J.F.C.*, 96 S.W.3d 256, 265-66 (Tex. 2002).

In a factual sufficiency challenge, the reviewing court must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* at 266 (citing *In re C.H.* at 25). It must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* The reviewing court must also consider whether disputed

4

evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Analysis

Statutory Predicate Grounds

Mother and Father's parental rights were terminated pursuant to subsections (D), (E), and (O) of section 161.001(b)(1) of the Family Code. Those subsections required a finding that each of them:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>
> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> . . . [or]
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child . . . .

§ 161.001(b)(1)(D), (E), (O). We will review the record to determine whether sufficient evidence supports the trial court's endangerment findings under subsection (D).

"Endanger" means to expose to loss or injury; to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.* The specific danger to the child's well-being may be inferred from parental misconduct standing alone, and to determine whether termination is necessary, courts may look to parental conduct both before and after the child's birth. *Id.*; *In re R.W.*, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).

There was evidence that both Father and Mother jeopardized the children's physical and emotional health by allowing them to live in unsanitary conditions. Their home was described by Kassi Millender, the Department caseworker, as "constantly filthy." Millender and the CASA (court appointed special advocate) volunteer, Holly Helton, both testified that the home was infested with roaches, which Mother admitted. Millender testified that, eventually, the daycare that the three youngest children attended paid for an exterminator to treat the cockroach infestation. The children were sleeping on the floor and the home had no running water at the time the children were removed. Millender described the monitored return as "chaotic" and "disastrous." Millender also expressed concern that there was insufficient food in the home. Photographs she took showed an extremely dirty refrigerator and freezer with little edible food and a kitchen cabinet containing trash and only one can of food.

Additionally, Millender and Helton testified that the children were frequently unclean and had a bad odor when in Mother and Father's care. Millender observed severe diaper rashes on J.H. and H.H., along with dried feces from not being cleaned

6

properly. Helton testified that she visited A.H., J.H., and L.H. at their school, usually in the morning, and they appeared dirty and smelled of "like a mildew smell and smoke." Helton visited H.H. and J.H. at daycare, and they also appeared "unkept" and dirty.

Millender also testified that there were occasions when the children needed medical attention and she had to encourage Mother to seek it. For example, Millender testified that during the monitored return, H.H. was once sent home from daycare with a fever of 102. When Millender called to check on him the next day, he had not been given any medicine or been taken to a physician, and he still had a fever of 102. When Millender discussed with Mother the need to get medical care for H.H., Mother replied that she would take H.H. to the emergency department when she got off work later that day. Millender testified to other instances in which she directed Mother to get medical treatment for the children.

Additionally, there was evidence of illegal drug use (methamphetamines and marijuana) by Father. Mother admitted she was aware of Father's use of marijuana, and told her counselor she expected it would continue. Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct that will support an affirmative finding that the parent has engaged in a course of conduct that has the effect of endangering the child. *See In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) (citing cases finding drug and alcohol use as constituting endangering conduct).

Finally, as part of the endangering conduct analysis, a court may consider a parent's failure to complete a service plan. *See In re R.F.*, 115 S.W.3d 804, 811 (Tex. App.—Dallas 2003, no pet.). The evidence was undisputed that Mother and Father did

not complete family therapy or a budgeting class. There was also evidence that they did not maintain stable employment. Mother and Father both reported various places of employment over the course of the case. Millender testified that, despite being asked to do so, Father and Mother never gave her pay stubs, and she was unable to verify how many hours they worked or how much money they made. There was also evidence Mother and Father did not maintain appropriate housing. Millender testified that although Mother and Father only lived in two different homes, the conditions in those homes were not always safe and secure. For example, Millender testified that at one point during the monitored return, the Department had to retrieve the children from the home because they were not being cared for appropriately and the home was infected with cockroaches. Mother testified that her house was messy when the children were there because there were five kids under the age of seven, and they make a mess and eat a lot. She admitted that it was a problem that her family was in a cycle in which the Department had to get involved to tell her to keep her house clean.

We conclude that the evidence, viewed in the light most favorable to a finding of endangerment, was sufficiently clear and convincing that a reasonable factfinder could have formed a firm belief or conviction that Mother and Father knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being. Further, we conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's endangerment determination or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that Mother and Father knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional

well-being. Consequently, we conclude that the evidence was legally and factually sufficient to support the subsection (D) endangerment finding.

Because, along with a best interest finding, a finding of only one ground alleged under section 161.001(b)(1) is necessary to support a judgment of termination, we need not address Mother and Father's arguments challenging the trial court's findings under subsections (E) and (O) of section 161.001(b)(1). *See* Tex. R. App. P. 47.1; *see also In re S.B.*, 207 S.W.3d 877, 886 (Tex. App.—Fort Worth 2006, no pet.) We overrule Mother's first issue and Father's first and second issues.

Best Interest Determination

We consider several factors when determining whether termination of parental rights is in the best interest of the child. There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). The Texas Supreme Court has recognized a non-exhaustive list of factors that are pertinent to the inquiry whether termination of parental rights is in the best interest of the child: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex.

9

1976). The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

The Department need not prove all nine *Holley* factors, and the absence of some factors does not preclude the factfinder from finding by clear and convincing evidence that termination is in the children's best interest, especially when there is undisputed evidence that the parental relationship endangered the child. *In re C.H.*, 89 S.W.3d at 27.

The Children's Desires

At the time of the final hearing, the children were ages two, three, five, six, and seven. By that time, they had been in the temporary managing conservatorship of the Department for more than 30 months. Millender testified that none of the children seemed upset or cried when they were removed from their parents' home the second time due to the home's unsafe conditions. However, Mother testified that the children wanted to come home with her and that they would be damaged if they did not have a relationship with her anymore. When asked if the children enjoyed their visits with Mother, Millender answered, "yes and no." The CASA volunteer reported that A.H. and J.H. had mixed feelings about liking their placement and wanting to return home. This factor weighs neither for nor against termination.

Emotional and Physical Dangers to Children; Parental Abilities

The children were removed from Mother and Father three times during a six-year period due to unsanitary home conditions and Father's substance abuse issues. At trial,

the caseworker, the children's attorney ad litem, and the CASA volunteer (all of whom recommended that Mother and Father's parental rights be terminated) testified to their concerns that Mother and Father had shown a pattern of requiring intervention from the Department in order to meet the children's needs. They expressed the opinion that Mother and Father were only able to maintain appropriate living conditions when the children were not there. Although there was evidence that Mother and Father's current home was in good condition, Mother admitted that the children were not living in the home. The evidence showed that, in the past, when the children were returned to Mother and Father, the conditions in the home would again deteriorate to an unacceptable state. Helton testified she had seen a pattern in which Mother and Father "could get things together and everything would look nice and neat, and then as soon as they get the kids back, it would go back to the mess, the rashes, the scabies, the filthiness and all that . . . they get it together and then it falls apart."

Mother's counselor, Lynn Jennings, testified that there was a disconnect between what Mother wanted to do and what she was actually able to do, meaning Mother had good intentions but it was hard for her to accomplish things. Additionally, Father reported that Mother was unable to take care of herself, "let alone the kids." Evidence of past misconduct or neglect is permissible as an inference that a parent's future conduct may be measured by their recent past conduct. *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi 1992, writ denied).

Mother and Father's difficulties in maintaining appropriate housing, as discussed above, cause concern for their parental abilities. Also, there was evidence that the children were frequently unclean and had a bad odor when in Mother and Father's care

11

and that they attended school and daycare in this condition. There was evidence that Mother and Father did not promptly seek medical attention for the children when needed. This evidence indicates a tendency toward neglect of the children. Consequently, these factors weigh in favor of termination.

Acts and Omissions of the Parent

There was evidence of drug and alcohol use by Father. Additionally, Father did not attend the final hearing. "The absence of a parent at the trial to terminate his or her parental rights is prejudicial to the parent. The parent's absence could leave the fact-finder with the impression that the proceeding is not important to the parent." *In re J.D.S.*, 111 S.W.3d 324, 327 (Tex. App.—Texarkana 2003, no pet.).

Plans for the Children

Millender testified that overall, the children were doing well in their placements. The children's feelings varied, as they would report to Millender one month that they were happy and the next month tell her that they did not like it. But, Millender testified, their needs were being met: the children were clean, well taken care of, current on medical needs, and had new clothes. Millender testified that if termination was granted, the Department intended to look for an adoptive placement for all of the children. However, only H.H. and J.H. were currently in an adoptive placement. Millender acknowledged that during the case, L.H. had been placed in four homes, H.H., J.H., and A.H. had been in three, and J.H. had been in two.

Assistance Programs Available

Mother completed the required Make Parenting a Pleasure class, a psychological evaluation, rational behavior training, individual counseling, and anger control training. However, Mother and Father did not complete family therapy, couples' therapy, or a budgeting class, and they did not notify the Department when they moved residences in January of 2017.

After viewing all of the evidence in the light most favorable to the best interest finding, we conclude the evidence was sufficiently clear and convincing that a reasonable fact finder could have formed a firm belief or conviction that termination of Mother and Father's parent-child relationships with the children was in the children's best interest. Further, we conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's finding or was not so significant as to preclude the court from reasonably forming a firm belief or conviction that termination was in their best interest. Therefore, the evidence was legally and factually sufficient to support the trial court's best interest finding. We overrule Mother's second issue and Father's third issue.

Conclusion

The evidence is legally and factually sufficient to support the trial court's decision to terminate Mother's and Father's parental rights to the children.  We affirm the judgment of the trial court.


Judy C. Parker
Justice