

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-17-00310-CV

IN THE INTEREST OF N.M.L. AND B.L.L., CHILDREN

On Appeal from the 223rd District Court
Gray County, Texas
Trial Court No. 38,555, Honorable Jack M. Graham, Presiding

January 19, 2018

MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

Following a bench trial, the trial court signed a judgment terminating the parent-child relationship between J.L. (Father) and his two daughters, N.M.L. and B.L.L.[1] Raising four issues, J.L. contends that the evidence was not legally or factually sufficient to support termination of his parental rights. We affirm.

---

[1] To protect the privacy of the parties involved, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2017); TEX. R. APP. P. 9.8(b).

## Factual and Procedural Background

The Pampa Police Department was called to the marital home of A.L.[2] and J.L. in the early morning hours of July 30 in response to an incident resulting in J.L. being stabbed by his wife, A.L. J.L. left the home before the police arrived. Officer Patrick Lambert "observed blood on the front side walk and on the front porch." A.L. related to Officer Lambert that she and J.L. had been drinking at a friend's, then she and J.L. engaged in a verbal argument that became physical after returning home. She reported that J.L. knocked her to the ground, held her down, and began to choke her. She claimed to have grabbed a knife to defend herself because she was in fear for her life. Officer Lambert noticed "finger shaped marks on the right side of her neck." He retrieved a broken knife from the trash can in the kitchen where A.L. told him she placed it. Officer Lambert observed several blood spots located in multiple places in the home. The couple's children, N.M.L. and B.L.L., were present at the home when A.L. stabbed J.L.

Corporal Bider, who arrived at the scene with Officer Lambert, saw a "small female child standing near the screen door" after A.L. stepped outside to speak to the officers. A.L. told Corporal Bider that J.L. had impaled himself on the knife as he was attempting to choke her. A.L. told Corporal Bider that J.L. did not actually choke her, but was "going to choke her based on his behavior." Corporal Bider did not see any injuries on A.L. A.L.'s father came to the home and observed N.M.L. "walking around in the blood that was in the floor."

---

[2] A.L. is the mother of N.M.L. and B.L.L. A.L. did not appeal the termination of her parental rights.

J.L. provided a different account of the events leading up to A.L. stabbing him. J.L. stated that A.L. had been griping and complaining all day. He went to a friend's house because he was tired of listening to her. A.L. called J.L. and told him to come home and to bring some beer. When he arrived home with the beer, A.L. continued to gripe at him so he prepared to leave again. As he was attempting to leave, A.L. grabbed a bread knife and tried to stab him with it, but it broke. She stabbed him two times with the broken knife before he was able to escape. His sister took him to the emergency room. While in the emergency room, J.L. stated that he wanted to press charges because he was scared that the next time he might not make it out of the situation alive.

Although A.L. and J.L. had different versions of the events leading up to the stabbing of J.L., they both agreed that A.L. had stabbed J.L. and that both of them had consumed an unknown quantity of beer before the physical altercation took place. A.L. was arrested for aggravated assault with a deadly weapon. The maternal grandparents, who were already caring for four of A.L.'s children, could not care for N.M.L. and B.L.L., resulting in the children entering the Department's care.

The Department filed its petition seeking to terminate A.L.'s and J.L.'s parental rights to N.M.L. and B.L.L. on August 1, 2016. Following an adversary hearing on August 22, 2016, the Department was named temporary managing conservator of the children.

Michael Haskins was assigned as the caseworker by the Department. The Department's investigation revealed that A.L. had a significant history with the Department, including previous validations for physical abuse and neglectful supervision. She had a history of domestic violence dating back to 2005. A.L. and J.L. reported to

3

Haskins that domestic violence was "pretty consistent throughout the relationship." J.L.'s use of alcohol and A.L.'s history of drug abuse were documented. J.L. told Haskins there were prior incidents of domestic violence between himself and A.L. and that they were "co-combatant." J.L. agreed with Haskins that domestic violence was an issue that he needed to address. J.L. indicated that he had been the aggressor for some of their domestic violence incidents and admitted that, prior to being stabbed by A.L., he had been the aggressor.

The Department developed service plans for J.L. and A.L., and the trial court ordered compliance with the plan requirements. The service plan required J.L. to participate in various services and counseling to address personal issues surrounding the removal of the children. J.L. satisfied the service plan's requirements that he participate in a psychological evaluation; a Batterer's Intervention Prevention Program (BIPP) and Outreach, Screening, Assessment, and Referral (OSAR) assessment; rational behavior training; and a parenting class. However, he did not complete individual counseling, couple's counseling, BIPP orientation, BIPP classes, or participate in AA. Haskins reviewed the service plan with J.L. "multiple times." J.L. agreed to work the service plan and indicated to Haskins that he knew what services he was required to complete.

During the pendency of this case, J.L. and A.L. continued to live together after A.L. was released from jail. J.L. is employed as a construction worker. A.L. is not employed outside of the home and relies on J.L.'s work income. Two months prior to trial, on May 3, 2017, A.L. tested positive for methamphetamine. A.L. failed to complete the following services required by her service plan: individual therapy, couple's counseling, and the

4

WAVE (Women Against Violence) program for domestic violence. A.L. also did not provide proof of participation in AA or maintain a drug-free lifestyle.

The children were placed with a paternal relative in Houston two months before the trial, and are doing well. The placement is interested in adopting the children. During trial, Haskins testified that the placement is capable of meeting the emotional and physical needs of the children currently and in the future. J.L. has not had a face-to-face visit with the children since they were placed in Houston, but maintained his weekly visits before they were relocated. He has telephoned the children two to three times a week since they have been in Houston. In the twelve months that N.M.L. and B.L.L. have been in the Department's care, J.L. has not paid his court-ordered child support or sent birthday cards or Christmas gifts to the children.

The trial court terminated J.L.'s and A.L.'s parental rights on the grounds of endangering conditions, endangerment, and failure to comply with a court order that established actions necessary to retain custody of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O) (West Supp. 2017).[3] The trial court also found that termination was in the children's best interest. *See* § 161.001(b)(2). Only J.L. has appealed.

APPLICABLE LAW

A parent's rights to the "companionship, care, custody[,] and management" of his or her child is a constitutional interest "far more precious than any property right."

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

5

*Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); s*ee In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1993)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id.*

In a case to terminate parental rights by the Department under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014); *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002). Both elements must be established and termination may not be based solely on the best interest of the children as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any

6

alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the children's best interest. *In re K.C.B.*, 280 S.W.3d at 894-95.

## STANDARDS OF REVIEW

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all of the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d at 266. To give appropriate deference to the fact finder's conclusions, we must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* We disregard all evidence that a reasonable fact finder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Evidence that does more than raise surmise or suspicion is not sufficient unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable fact finder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations.

*Id.* We must also consider whether disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

ANALYSIS

Sufficiency of the evidence under § 161.001(b)(1)(D), (E), (O)

In his first three issues, J.L. challenges the legal and factual sufficiency of the evidence to support the termination of his parental rights under section 161.001(b)(1)(D), (E), and (O). Although only one statutory ground is required to support termination, *see In re A.V.*, 113 S.W.3d at 362, we find there is sufficient evidence of multiple grounds in this case to support termination. We will limit our analysis of the sufficiency of the evidence in support of subsections (D) and (E).

A trial court may order termination of a parent-child relationship if the court finds by clear and convincing evidence that a parent has knowingly placed or knowingly allowed a child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child and/or engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. *See* § 161.001(b)(1)(D), (E). Both subsections (D) and (E) require proof of endangerment. To "endanger" means to expose the child to loss or injury; or to jeopardize the child's emotional or physical health. *Boyd,* 727 S.W.2d at 533. A child is endangered when the environment creates a potential for danger that the parent is aware

8

of but consciously disregards. *J.S. v. Tex. Dep't of Family & Protective Servs.,* 511 S.W.3d 145, 159 (Tex. App.—El Paso 2014, no pet.). Endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child suffer injury. *In re N.K.,* 399 S.W.3d 322, 330-331 (Tex. App.—Amarillo 2013, no pet).

While both subsections (D) and (E) focus on endangerment, they differ regarding the source of the physical or emotional endangerment to the child. *See In re B.S.T.*, 977 S.W.2d 481, 484 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Subsection (D) requires a showing that the environment in which the child is placed endangered the child's physical or emotional health. *Doyle v. Tex. Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied). Conduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D). *In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no pet.). Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the "conditions or surroundings" of the child's home under subsection (D). *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.). The fact finder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *Id.* Thus, subsection (D) addresses the child's surroundings and environment rather than parental misconduct, which is the subject of subsection (E). *Doyle*, 16 S.W.3d at 394.

Under subsection (E), the cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions, but also by the parent's omission or failure to act. *In re M.J.M.L.,* 31 S.W.3d 347, 350-51 (Tex. App.—San Antonio 2000, pet. denied); *Doyle*, 16 S.W.3d at 395. To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re E.P.C.*, 381 S.W.3d 670, 683 (Tex. App.—Fort Worth 2012, no pet.). The specific danger to the child's well-being need not be established as an independent proposition, but may be inferred from parental misconduct. *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.).

It is undisputed in this case that N.M.L. and B.L.L. were present in the home when the altercation broke out that resulted in A.L. stabbing J.L. with a kitchen knife, and that both parents consumed an unknown amount of beer before the fight. After the fight, J.L. left the children in A.L.'s care knowing that she was violent. At some point in the chaos that morning, N.M.L. was awake and walking around in the blood on the floor. J.L. admitted to the caseworker that he was the aggressor prior to being stabbed. The exposure of the children to domestic violence resulted in their removal from the home. The caseworker testified that J.L. related to him that there had been prior domestic violence between J.L. and A.L. on more than one occasion and "it's something that was pretty consistent throughout the relationship." Both parents admitted to being co-combatant. J.L. did not avoid contact with A.L. despite their history of domestic violence

but continued to live with her after she was released from jail. A.L. tested positive for methamphetamine two months prior to the final hearing. A parent's violent or abusive conduct can produce an environment that threatens a child's well-being. *S.H.R. v. Dep't of Family & Protective Servs.,* 404 S.W.3d 612, 645 (Tex. App.—Houston [1st Dist.] 2012), *aff'd by, In re S.M.R.,* 434 S.W.3d 576 (Tex. 2014) (Brown, J., dissenting). "Domestic violence, want of self[-]control, and propensity for violence may be considered as evidence of endangerment." *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

In addition, the trial court could have considered J.L.'s failure to complete significant requirements of his service plan as part of the endangering conduct analysis under subsection (E). *See In re R.F.,* 115 S.W.3d 804, 811 (Tex. App.—Dallas 2003, no pet.); *In re T.H.,* No. 07-07-00391-CV, 2008 Tex. App. LEXIS 6107, at *21-22 (Tex. App.—Amarillo Aug. 12, 2008, no pet.) (mem. op.). The Department developed a service plan for J.L. and the trial court ordered him to comply with each of its requirements. The service plan required J.L. to participate in parenting classes and individual counseling to address personal issues surrounding the removal of his children. Significantly, J.L. failed to complete the services directly related to the reasons for the children's removal. J.L. failed to complete individual counseling and couple's counseling. He completed his BIPP assessment, but did not return for the orientation or the classes. J.L. acknowledged alcohol issues but did not participate in AA as required.

Domestic violence leads to an unstable and unpredictable home for children. J.L. has not taken the necessary steps to remedy the instability of the home or to address the threat of his children being again subject to domestic violence. By continuing to live with

A.L., the trial court could have reasonably inferred that J.L. would continue his pattern and practice of providing an unstable and abusive home for his two young children that has the potential to compromise their emotional and physical well-being.

The trial court could have been persuaded that the combination of alcohol use and domestic violence was conduct that produced an endangering environment. The domestic violence incident on July 30, 2016, that resulted in J.L. going to the hospital, A.L. being arrested, and the children's removal, support the trial court's finding of termination under subsections (D) and (E). The trial court was not required to ignore J.L.'s report of history of domestic violence in considering endangerment, or J.L.'s failure to complete court-ordered services which would have addressed domestic violence issues.

Having examined the entire record, we find that the trial court could reasonably form a firm belief or conviction that J.L. knowingly placed or knowingly allowed N.M.L. and B.L.L. to remain in conditions or surroundings which endangered their physical or emotional well-being and engaged in conduct which endangered N.M.L. and B.L.L.'s emotional and physical well-being. The same evidence is factually sufficient to support the trial court's affirmative finding. Issues one and two are overruled. Having overruled issues one and two, it is unnecessary to address issue three.[4]

Best Interest of the Children

---

[4] Because only one statutory predicate ground is required to support termination when there is also a finding that termination is in the child's best interest, we need not address J.L.'s challenge to the sufficiency of the evidence to support the trial court's finding of a statutory predicate ground under subsection (O). *See In re A.V.*, 113 S.W.3d at 362; *In re K.C.B.,* 280 S.W.3d at 894-95.

In issue four, J.L. challenges the legal and factual sufficiency of the evidence supporting the best interest finding made under section 161.001(b)(2). A determination of best interest necessitates a focus on the child, not the parent. *See In re B.C.S.,* 479 S.W.3d at 927. Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.* "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis

may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.,* 338 S.W.3d 676, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. See *In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

The Desires of the Children

At the time of trial, N.M.L. was three years old and B.L.L. was one year old. There is no evidence indicating that N.M.L. or B.L.L. had the ability to articulate their wishes. When there is no evidence of the desires of the child, this factor is neutral. *In re C.A.J.,* 459 S.W.3d 175, 183 (Tex. App.—Texarkana 2015, no pet.).

The Emotional and Physical Needs of and Danger to the Children

The next two factors are the child's emotional and physical needs now and in the future, and the emotional and physical danger to the child now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Edwards v. Tex. Dep't of Protective & Regulatory Servs.,* 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no writ). A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re D.L.N.,* 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied), *disapproved on other grounds by, In re J.F.C.*, 96 S.W.3d at 256. The undisputed evidence demonstrated that the Department became involved after a domestic violence incident between J.L. and A.L. The children were present in the home when the incident

occurred.  Following this incident, A.L. was arrested for stabbing J.L.  N.M.L. was observed "walking around in the blood that was in the floor" after the stabbing.  J.L. told his caseworker that there were prior incidents of domestic violence and use of alcohol.

Evidence of the parents' history of domestic violence supports the trial court's best interest finding.  *See J.I.T.P.,* 99 S.W.3d at 846 (domestic violence supports finding that termination is in child's best interest even when child is not a victim of violence).  Moreover, a parent's continued exposure to the other parent's dangerous conduct is also evidence of endangerment and a relevant consideration in determining a child's best interest.  *In re O.N.H.,* 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.) (considering parent's exposure to other parent's drug habits as relevant factor in determining child's best interest).

The evidence establishes that J.L. failed to complete his court-ordered services directly related to the reason for the removal.  In addition, J.L. remained in the relationship with A.L., who tested positive for methamphetamine two months prior to trial.  J.L.'s failure to address the domestic violence issue and his willingness to remain in a violent relationship with someone who abused drugs, suggests that similar conduct will occur in the future, thereby constituting evidence of emotional and physical danger to the children now and in the future*.  In re D.L.N.,* 958 S.W.2d at 941.  These two factors weigh heavily in favor of the trial court's best interest determination.

Parenting Ability and Programs Available to Assist Party Seeking Custody

The fourth and fifth factors will be discussed together.  In reviewing the parenting ability of the parent, a fact finder can consider the parent's past neglect or past inability

to meet the physical and emotional needs of the children. *In re G.N.,* 510 S.W.3d 134, 139 (Tex. App.—El Paso 2016, no pet. h.). The fact finder can infer from a parent's failure to take the initiative to avail himself of the programs offered to him by the Department that the parent "did not have the ability to motivate [himself] to seek out available resources needed now or in the future." *In re J.M.,* No. 01-14-00826-CV, 2015 Tex. App. LEXIS 2130, at *21 (Tex. App.—Houston [1st Dist.] Mar. 5, 2015, no pet.) (mem. op.) (*citing In re W.E.C.*, 110 S.W.3d 231, 245 (Tex. App.—Fort Worth 2003, no pet.)).

J.L. was court-ordered to comply with reunification services, yet he failed to complete the services directly related to the reason for the children's removal. Although J.L. completed some of the services, he failed to complete individual counseling, BIPP classes, and failed to attend AA to address his alcohol issues. Despite remaining in the relationship with A.L., he failed to complete couple's counseling. J.L.'s failure to complete these necessary services could have led the trial court to infer that J.L. did not have the ability to motivate himself to seek out available resources now or in the future. *See id.* The trial court was entitled to find that this evidence weighed in favor of the best interest finding.

Plans for the Child and Stability of the Home or Placement

We will consider the sixth and seventh factors together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. Stability and permanence are paramount in the upbringing of children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The fact finder may compare the parent's and the

Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119-20.

J.L. has continued a tumultuous relationship that he described as "co-combatant," and failed to avail himself of services that would better his living situation. J.L. has demonstrated that he is unable to provide an appropriate environment for himself, much less the two young children who are in need of a safe and stable home. Haskins testified that the children were doing well in the current placement and the placement is interested in adopting the children if parental rights are terminated. This evidence supports the trial court finding that termination was in the best interest of the children.

Acts and Omissions of the Parent

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. The evidence established that J.L. engaged in conduct which endangered N.M.L. and B.L.L.'s physical and emotional well-being; did not complete services available to address the issues which led to the children's removal; has not paid his court-ordered child support in the twelve months that the children have been in the Department's care, even though he has been employed as a construction worker during that time; and has a history of domestic violence. J.L. did not attend the final hearing. The absence of a parent at the trial to terminate his parental rights is prejudicial to the parent. *In re J.D.S.*, 111 S.W.3d 324, 327 (Tex. App.— Texarkana 2003, no pet.). The parent's absence could leave the fact finder with the impression that the proceeding is not important to the parent. *Id.* In considering all of this

evidence, the trial court could have found that the existing parent-child relationship is not a proper one.

Excuses for the Parent's Acts or Omissions

The ninth factor is whether there is any excuse for the parent's acts or omissions. J.L. was employed in the construction business. Haskins visited J.L. on a job site and observed him working. There is no evidence that J.L.'s work schedule prevented him from attending the trial. Further, J.L. offered no excuse for failing to pay court-ordered child support during the pendency of this case. J.L. claimed to have forgotten a missed counseling session. The last contact the Department had with J.L. was on June 5, shortly after the children were placed in Houston.

Having reviewed all of the *Holley* factors, we conclude that the evidence is both legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of J.L's parental rights is in the best interest of N.M.L. and B.L.L. Issue four is overruled.

CONCLUSION

The judgment of the trial court terminating J.L.'s parental rights is affirmed.

Judy C. Parker
Justice