

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00003-CV

_____

IN THE INTEREST OF D.B., A CHILD

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 20C0218-CCL

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Chief Justice Morriss

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

## MEMORANDUM OPINION

The Department of Family and Protective Services (Department) filed a petition to terminate Helen's parental rights to her newborn daughter, D.B.[1]  The trial court terminated Helen's parental rights after finding that she constructively abandoned the child, as described in Section 161.001(b)(1)(N) of the Texas Family Code, and that she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain D.B.'s return, as described in Section 161.001(b)(1)(O).

On appeal, Helen challenges only the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of her parental rights was in D.B.'s best interests.  Because we find the evidence sufficient, we overrule Helen's point of error and affirm the trial court's judgment.

*(1)*     *Standard of Review*

"The natural right existing between parents and their children is of constitutional dimensions." *In re L.E.S.*, 471 S.W.3d 915, 919 (Tex. App.—Texarkana 2015, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)).  "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)).  "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)).  This Court is required to

---

[1]To protect the confidentiality of the child involved, we refer to all parties by pseudonym.  *See* TEX. R. APP. P. 9.8(b)(2).

"engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* at 919–20 (quoting *A.B.*, 437 S.W.3d at 500).

"[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* at 920 (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20)). "In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *Id.* (citing *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). "This standard of proof necessarily affects our review of the evidence." *Id.*

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *Id.* (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*,

3

872 S.W.2d 189, 195 (Tex. 1994))); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2006)).

Because Helen concedes that legally and factually sufficient evidence supported the findings that she engaged in two statutory grounds for termination of her parental rights to D.B., the child's best interest is the only issue that we review.

> In determining the best interests of the child, courts consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b). Further, in the best-interest analysis, we may consider evidence used to support the grounds for termination of parental rights. *C.H.*, 89 S.W.3d at 28.

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that" termination of the parent-child relationship was in the best interest of the child. *L.E.S.*, 471 S.W.3d at 920 (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We

assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (quoting *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002).

"If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266). To make this determination, we undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *Id.* (quoting *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26)).

*(2)     The Evidence at Trial*

At the December 2020 trial, the Department introduced evidence that Helen's parental rights to two other children, K.B. and Z.B., were recently terminated by the same judge in October 2020 on grounds that Helen (1) knowingly placed or allowed K.B. and Z.B. to remain in

5

conditions or surroundings that endangered their physical or emotional well-being, (2) engaged in conduct or knowingly placed K.B. and Z.B. with persons who engaged in conduct that endangered their physical or emotional well-being, (3) constructively abandoned K.B. and Z.B., and (4) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain K.B.'s and Z.B.'s return. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O). Helen did not object to the admission of the prior judgment.

The Department then turned its attention to D.B. Beverly Lucas, an investigator for the Department, testified that D.B. was removed from Helen's possession as soon as she was born on January 30, 2020. Lucas testified that she "attempted to give [Helen] visitation several times by phone calls and text messages," but that Helen failed to attend. Cheryl Stuart, the Department's conservatorship worker, testified that she had no contact with Helen since February 2020 and that Helen had not worked any services offered by the Department. Stuart said that it was in D.B.'s best interests for Helen's parental rights to be terminated because the child had been in an adoptive placement since she was born, had thrived in that placement, and did not know Helen. Joey Elliott, the Court Appointed Special Advocate (CASA) for the child, testified that he attempted to contact Helen twice a month since CASA was assigned to the case, but Helen did not return any of his telephone calls. Elliott also said that D.B. was thriving in her adoptive placement and that it was in her best interests for Helen's parental rights to be terminated.

Helen's appointed counsel stated that she spoke with Helen on March 25, 2020, scheduled a videoconference in May, for which Helen did not appear, and made several telephone calls to her that were unreturned. In response to a letter, counsel spoke with Helen on

6

September 24 and informed her of the trial court's December 17 final hearing date. Counsel also sent a letter on October 7 reminding Helen of the hearing and left an unreturned voicemail on October 23. Despite counsel's efforts, Helen failed to appear at trial.

After hearing this evidence, the trial court found that Helen constructively abandoned D.B., that Helen failed to comply with court orders establishing the actions necessary for her to obtain D.B.'s return, and that termination of Helen's parental rights was in D.B.'s best interests.

*(3)    Analysis of the* Holley *Factors*

Helen's argument focuses on the brevity of the trial and argues that enough evidence was not presented. We focus on the quality of the evidence presented instead of the length of trial or the omission of evidence that could have been presented. In doing so, we conclude that all the *Holley* factors supported termination of Helen's parental rights, and thus, the trial court's termination order was supported by legally and factually sufficient evidence.

Typically, the first *Holley* factor is neutral when the child is too young to express her desires. However, the evidence in this case showed that Helen never saw D.B. after she was born and failed to exercise any visitation rights. The fact that Helen had not seen D.B. for eleven months and failed to appear at trial "suggests that there was little, if any, emotional bond between" D.B. and Helen. *In re K.A.M.C.*, No. 06-18-00109-CV, 2019 WL 1186709, at \*4 (Tex. App.—Texarkana Mar. 14, 2019, no pet.) (mem. op.). While there was no evidence that Helen loved or cared for D.B., the Department presented evidence that D.B. was placed with foster parents who cared for and wanted to adopt her. Because D.B.'s foster parents were the only parents she knew, the first *Holley* factor weighs in favor of terminating Helen's parental rights.

7

*See id.*; *In re M.S.*, No. 06-18-00106-CV, 2019 WL 1388047, at \*4 (Tex. App.—Texarkana Mar. 28, 2019, no pet.) (mem. op.).

As for the second and third *Holley* factors, D.B. was less than twelve months old at the time of trial, and "young children require a great deal of time, attention, and protection." *In re J.S.*, No. 06-20-00038-CV, 2020 WL 5806131, at \*6 (Tex. App.—Texarkana Sept. 30, 2020, no pet.) (mem. op.) (quoting *In re L.W.*, 609 S.W.3d 189, 203 (Tex. App.—Texarkana 2020, no pet.)). Yet, the evidence showed that Helen could not meet D.B.'s emotional and physical needs, had made no effort to support D.B., and had instead abandoned the child. We find that the second and third *Holley* factors support termination of Helen's parental rights. *See id.*; *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("A fact-finder may infer from a parent's past inability to meet a child's physical and emotional needs an inability or unwillingness to meet a child's needs in the future.").

The fourth factor focused on Helen's parental abilities. "[E]vidence of past misconduct or neglect can be used to measure a parent's future conduct." *In re H.C.*, 602 S.W.3d 654, 661 (Tex. App.—Texarkana 2020, no pet.) (mem. op.) (quoting *In re B.K.*, No. 06-18-00037-CV, 2018 WL 3892860, at \*4 (Tex. App.—Texarkana Aug. 16, 2018, pet. denied) (mem. op.)). The Department's evidence of the recent termination of Helen's parental rights to her two other children—finding that Helen knowingly placed or allowed K.B. and Z.B. to remain in conditions or surroundings that endangered their physical or emotional well-being and engaged in conduct or knowingly placed K.B. and Z.B. with persons who engaged in conduct that endangered their physical or emotional well-being—was especially probative of this factor because it supported a

8

finding that Helen also lacked the parental abilities to care for D.B. *See J.S.*, 2020 WL 5806131, at *6 (evidence of prior terminations, among other things, showed that Father lacked parental abilities to care for his child). Moreover, in analyzing this factor, "[w]e may also consider 'the amount of contact between the parent and child.'" *In re K.L.M.*, No. 06-17-00110-CV, 2018 WL 988394, at *5 (Tex. App.—Texarkana Feb. 21, 2018, no pet.) (mem. op.) (quoting *H.C.*, 602 S.W.3d at 661). Helen had no contact with D.B. at any point in the child's life. This indicated "a lack of desire to parent." *M.S.*, 2019 WL 1388047, at *6 (citing *In re K.S.*, 420 S.W.3d 852, 855–56 (Tex. App.—Texarkana 2014, no pet.) (lack of contact between the parent and child weighs in favor of termination because it shows a "lack of resolve" or disinterest in parenting the child)). We find that the fourth *Holley* factor weighs heavily in favor of terminating Helen's parental rights.

Next, although there were several programs offered to assist Helen, she failed to participate in her family service plan. The recent termination of parental rights to her two other children, which was also based on her failure to complete the family service plan in that case, counsel's acknowledgment that she spoke with Helen before trial, and Helen's failure to appear at trial could support a fact-finder's inference that Helen knew the importance of participating in services but made a conscious decision not to. We find that the fifth *Holley* factor weighs in favor of terminating parental rights.

As for the sixth factor, the Department informed the trial court that D.B. was well cared for and that its plan was for D.B. to be adopted by her foster parents. Because there was no

evidence showing that Helen had any plan for D.B., the sixth *Holley* factor weighs in favor of terminating her parental rights.

Turning to the seventh and eighth factors, "[t]he amount of contact between the parent and child, the parent's failure to provide financial and emotional support, . . . and their past performance as a parent are all relevant in determining the child's best interest." *In re A.T.*, No. 06-14-00091-CV, 2015 WL 733275, at *5 (Tex. App.—Texarkana Feb. 18, 2015, no pet.) (mem. op.). Helen's past performance as a parent showed that two children were recently removed from her due to endangering acts or omissions, which supported a finding that her home was unstable. Also, Helen did not show that she had a stable home and income, because Helen failed to participate in the family service plan. Her lack of participation throughout the case, undisputed failure to complete her family service plan, and her "absence from trial [allowed the trial court] to conclude that the proceeding was not important to [her]" and that the existing parent-child relationship was not proper. *M.S.*, 2019 WL 1388047, at *6 (citing *In re J.D.S.*, 111 S.W.3d 324, 327 (Tex. App.—Texarkana 2003, no pet.) ("The absence of a parent at the trial to terminate his or her parental rights is prejudicial to the parent. The parent's absence could leave the fact-finder with the impression that the proceeding is not important to the parent.")). We find that the seventh and eighth *Holley* factors weigh in favor of terminating Helen's parental rights.

The last *Holley* factor also favors termination of Helen's parental rights because she failed to appear at trial and offered no excuse for her acts or omissions.

After weighing all the *Holley* factors, we conclude that the evidence was legally and factually sufficient to support the trial court's finding that termination of Helen's parental rights was in D.B.'s best interests. As a result, we overrule Helen's point of error.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     April 12, 2021
Date Decided:       April 13, 2021

11